The complainant, The Morris Community Chest, is a charitable corporation duly organized under the laws of this state. It was organized for the purposes, among others, of encouraging and engaging in the federation and co-ordination of the *Page 581 
welfare work in Morris county; providing an agency through which worthy charitable relief, social welfare and like activities of general concern in that county might unite their appeals to the public for financial aid and support, and of organizing and conducting campaigns for voluntary subscriptions and contributions to such activities.
Harriet Shelton Sherman died July 9th, 1931, and by her last will and testament provided an endowment fund in the fifth article thereof as follows:
"I give, devise and bequeath the sum of $10,000 Ten Thousand Dollars to the organization known as THE MORRISTOWN COMMUNITY CHEST, and to start an Endowment Fund, if one has not already been started, and the interest only arising therefrom to be used yearly as though it were a contribution from my late husband, Gordon E. Sherman and me."
Later, under the last will and testament of Edith Sherman Knox, a legacy of $59,000 was bequeathed to the complainant "to be by the said Morris Community Chest invested and reinvested and the income therefrom to be annually used for the general purposes of the chest."
Complainant now holds in its endowment fund railroad and utility bonds, the book value of which is $33,075.83, industrial and preferred stocks, the book value of which is $13,763.76, and in cash $22,857.19, making a total endowment fund of $69,696.78.
Complainant prays the court by its decree to permit and direct complainant to invest and from time to time to reinvest all or a substantial part of the endowment fund in some or all of the common stocks of the companies named in the bill of complaint and in such other common stocks and investments as may be approved by the court. It alleges in the bill of complaint and supports the allegation by proof that there has been a drastic change in economic conditions in this country and throughout the world which makes it impossible to procure an interest return or income upon government or municipal bonds or other investments authorized by law for the investment of trust funds equal to more than a small fraction of the interest rate available upon such investments *Page 582 
when the endowment fund was by the donor established; that economic conditions render and will continue to render it very difficult and impossible for complainant annually to procure by subscriptions and contributions the funds required for the budgets of the member charities named in the bill of complaint, resulting in greater dependence upon the income from the endowment fund; that by reason of the changing conditions the objects and purposes of the endowment fund are being and will in the future be defeated in whole or in part by the investment of all of the funds in the kinds or classes of securities to which complainant, as trustee of a charitable trust, is limited by law and by the mentioned last wills and testaments.
The answer of the member charities admits the formal allegations of the bill of complaint and that their various interests "will be promoted by an investment plan providing increased income without unduly jeopardizing the corpus."
The relief prayed for is founded upon the inherent jurisdiction of the court of chancery in the premises and upon the provisions of R.S. 3:16-17 and 18.
This court has the undoubted power as part of its original inherent jurisdiction in matters of trust, and may in cases of emergency, in its capacity as universal trustee, for the preservation of the trust estate and the protection of thecestuis, authorize and direct the trustees to do acts which under the terms of the trust and under ordinary circumstances they would have no power to do. New Jersey National Bank andTrust Co. v. Lincoln Mortgage and Title Guaranty Co., 105 N.J. Eq. 557,563; 148 Atl. Rep. 713.
Albeit the court of chancery always had jurisdiction to permit investments of trust funds in other than those specifically mentioned in the statute, that fact does not deprive R.S.3:16-17 and 18 of weight and influence, since prior to the adoption of the statute, while the court had in some instances acted, there was an apparent reluctance on the part of the court as indicated by some of the cases.
The legislature by enactment of the cited statute, to my mind, made it clear that it recognized, that the court had *Page 583 
jurisdiction to act, and that presently conditions were such, in the opinion of the legislature, that the court, in proper cases,should act, and it therefore expressly authorized the court in certain instances to act and provided the method of procedure. Among the classes of investments which the legislature thought might be authorized, were common and preferred stocks, and it recognized by the provisions of the act that conditions presently existed which might make it necessary to invest in common stocks in order to maintain the integrity of a trust fund, and while the inherent power of the court was unlimited, it intended by the statute to limit the power of the court in this respect, and therefore inserted the provisions in R.S. 3:16-18 "provided, that the court shall not authorize or direct the purchase of any class of common or preferred stock of any corporation unless such corporation shall have been organized and engaged in the conduct of its business for five calendar years immediately preceding the purchase of the stock of such corporation."
That a serious economic change in conditions occurred since the creation of the trust herein is not only established by the testimony, but is a matter of such common knowledge that the court may take judicial notice thereof. By the testimony it is established that the changes in conditions which prompted this application are applicable with equal force to the principal as well as the income of the fund.
I am of opinion from the evidence that the objects and purposes of the trust fund have already been defeated in part, and may be wholly defeated, if the trustee be restricted solely to investments allowed trustees by law. I conclude that the objects and purposes of the fund and the interest of the beneficiaries will be promoted by permitting the trustee in the exercise of discretion to invest one-third of the trust fund in common stocks of the kinds enumerated in the bill of complaint in order to produce not only more income but also to safeguard the principal of the fund. *Page 584