FRANK C. RAND, ALBERT M. KELLER and JAMES L. WESTLAKE, Trustees of Barnes Hospital, v. ROY MCKITTRICK, Attorney General, Appellant.—142 S. W. (2d) 29.

Division Two, July 3, 1940.

*Russell C. Stone,* Assistant Attorney General, for appellant.

*Forest P. Tralles* for respondents.

468

*Rhodes E. Cave, Samuel A. Mitchell* and *Richard D. Shewmaker,* *amici curiae.*

WESTHUES, C.—This action was filed in the circuit court of the city of St. Louis, Missouri, by the trustees of Barnes Hospital, to determine the power and authority of the trustees, under the will creating the trust, in regard to the manner of investing the trust funds, and for an approval of the investments made. The trial court entered a decree for the trustees and the defendant appealed. ■ The Attorney General of the State was made a party defendant as representing a class of unknown and unnamed charitable beneficiaries. A state officer being sued in his official capacity vests this court with appellate jurisdiction.

The facts are conceded. Robert A. Barnes, by his will, left a vast estate in trust for the purpose of erecting and maintaining a hospital in the city of St. Louis, Missouri, for sick and injured persons without distinction of creed. In the year 1912, the trustees named in the will had on hand approximately $2,000,000 in property, consisting of real estate, cash, stocks and bonds. The hospital was immediately erected and has since been conducted under the name of Barnes Hospital. The plaintiffs in this case, Frank C. Rand, Albert M. Keller and James L. Westlake, are the present trustees. The trustees' duties included investment of the funds of this charitable trust. Since the hospital was constructed a number of bequests, totalling approximately $300,000, have been added to the endowment fund originally created by Barnes. At the time of the trial over $1,000,000 of the fund was found to have been invested in common and preferred stocks and bonds of private corporations, and about $150,000 was invested in United States Government securities. Nearly one-half of the fund was invested in stock and the other half in bonds. The income from these investments, for the year 1936, amounted to approximately $24,000 from the stocks and $18,000 from the bonds. The record shows that Barnes Hospital is no meager institution. The total income for the year 1936 was over $505,000. The total expense, including $25,000 depreciation, was approximately $680,000. The deficit in round numbers was $175,000. The hospital received a sum of $79,000 from the community fund on the theory that the hospital was largely a charitable institution. The record supports the theory. It was disclosed that for the year 1936 only about eleven per cent of the patients at the hospital paid in full for the services received. By the will of Barnes certain real estate was also devised to the trustees with the admonition that it was not to be sold, and that the net income from this property was to be utilized to maintain the hospital. The real estate is not involved in this controversy and it will not be further noticed.

The issue before the trial court and this court was thus stated in appellant's brief:

"The issue before this court is entirely one of law, to determine what are lawful investments trustees may make in the absence of limiting and restricting provisions in the trust agreement and in absence of any statutory inhibitions.'

"In this respect, the interest of appellant and respondents · are identical in that, the primary object is to preserve the trust res so that it may be used to the greatest advantage of beneficiaries. The only difference existing between respondents and appellant is to how this objective may be accomplished.

"The respondents favor a wide diversification of investments of the trust *res,* including investments in corporate stocks both common as well as preferred.

"The appellant takes the position that, such investments are not sanctioned by the greater weight of authority and, as a result, do not coincide with the highest possible regard for the preservation of the trust *res.*"

The question for determination therefore is: May trustees of a charitable trust, in the absence of statutory inhibition or restrictions imposed in the grant, invest trust funds in stocks of private corporations? No case from Missouri is cited in the briefs which directly involved this question. The authorities from other jurisdictions are to some extent in conflict. There are two lines of authority which will be briefly noticed. One of these, often referred to as the New York rule, does not permit trustees to invest in stocks of private business corporations. The other rule, referred to as the Massachusetts rule, permits such investments to be made. A collation of the cases illustrating the two theories may be found in the annotations to the case of Walker v. Buhl (Mich.), 178 N. W. 651, 12 A. L. R. 569, l. c. 575, 580. In a number of these states trustees' investments in private corporate stocks are regulated by statute or constitutional provisions. As a rule they prohibit such investments. [See People's State Bank & Trust Co. v. Wade, 269 Ky. 89, 106 S. W. (2d) 74; White v. White, 230 Ala. 641, 162 So. 368, l. c. 371, 372 (6) (7); In re Taylor's Estate, 277 Pa. 518, 121 Atl. 310, l. c. 311 (2).] In other states the rule prohibiting investments of trust funds in stocks of private corporations was established by the courts. [See In re Grotenrath's Estate, 258 N. W. 453, 217 Wis. 109; Sellers v. Milford et al., 101 Ind. App. 590, 198 N. E. 456; King v. Talbot, 40 N. Y. 76.] Courts of other states have held that a trustee may invest trust funds in stocks of private corporations. [See Harvard College v. Amory (Mass.), 9 Pick. 446; Morris Community Chest v. Wilentz, 124 N. J. Eq. 580, 3 Atl. (2d) 808, l. c. 810 (4); Marshall v. Frazier (Ore.), 80 Pac. (2d) 42, l. c. 58 (23) (by statute enacted 1929); Walker v. Buhl et al., supra;

Fox v. Harris et al., 141 Md. 495, 119 Atl. 256.] In Restatement of The Law, on trusts, sec. 227, page 651, the rule is stated as follows:

"The purchase of shares of preferred or common stock of a company with regular earnings and paying regular dividends which may reasonably be expected to continue is a proper trust investment if prudent men in the community are accustomed to invest in such shares when making an investment of their savings with a view to their safety."

As to the duty of a trustee in making investments, see sec. 227, page 645, of the same book, where we find the rule as follows:

"In making investments of trust funds the trustee is under a duty to the beneficiary:

"(a) in the absence of provisions in the terms of the trust or of a statute otherwise providing, to make such investments and only such investments as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived."

This latter statement is the yardstick generally used by the courts of the union in determining the duties of a trustee. Courts following the New York rule, as well as those following the Massachusetts rule, are in perfect harmony on this question. It is also the rule in this State. [See Cornet v. Cornet, 269 Mo. 298, 190 S. W. 333, 1. c. 339 (5).]

An analysis of these cases will disclose that the courts of the land have required trustees of trust funds to exercise a greater degree of care and caution when investing such funds than prudent men ordinarily exercise when investing their own funds. Investments which are speculative in nature have been universally tabooed, by the courts of the union, as proper investments for trust funds. Yet prudent men may and do invest in speculative enterprises. [Wild v. Brown, 183 Atl. 899, 120 N. J. Eq. 31.] Hence the rule is well stated, Restatement Of The Law, on trusts, supra, that trustees may "make such investments and *only* such investments as a prudent man would make of his own property *having primarily in view the preservation of the estate and the amount and regularity of the income to be derived.*" The part we have italicized is important. If that rule is adhered to, does it become necessary, or is it expedient or advisable for a court to arbitrarily declare any particular class of securities as unfit for trust investments? We think not. An examination of the cases will demonstrate that trust funds, in those states where the courts, Legislature, or the people by constitutional provision have prohibited the investment of trust funds in stocks, have fared no better than have the trust funds in the states following the Massachusetts rule. We think this demonstrates that the preservation of trust estates depends more upon the integrity, honesty and business acumen of the trustees than it does upon arbitrary legal classification of securities wherein trust

funds may be invested. Changed economic conditions often play havoc with the best laid plans. For example, a favorite investment, that is, first mortgage security on farm lands and other real estate, due to a changed economic condition, was the cause of many banks closing their doors in recent years. The question of whether trustees may properly invest funds in their care in stocks has been given serious consideration by a number of courts of other states. Note, in the case of Walker v. Buhl, supra, the Michigan court reviewed cases supporting both theories and then refused to establish any definite rule as to the class of securities in which trust funds may be legally invested. The court there went on to say:

"When such a fund passes into the hands of a trustee, it becomes impressed with a double duty: First, to so invest it that it can be turned over at the expiration of the trust period without loss; and, second, to secure an income therefrom. He must act honestly and faithfully, and in what he believes to be the best interest of the *cestui que trust*. He must exercise a sound discretion. He is bound to proceed with diligence in investigating the nature of the proposed investment, and to use such care in deciding as, in general, prudent men of intelligence and integrity in such matters employ in their own affairs when making a permanent' investment, in which the primary object is the preservation of the fund, and the secondary one that of obtaining an income therefrom. He must not permit himself to take the hazard of an investment with the hope of largely increasing the fund, as he might, perhaps, do in the prudent management of his own estate. The entire element of speculation must be removed. He must at all times remember that he is handling a trust fund, the care of which has been intrusted to him in reliance on his integrity, fidelity, and sound business judgment."

Turning our eyes to the present case we find from the evidence given by Mr. Rand that he had been one of the trustees since the year 1916; that the trustees always carefully investigated the securities in which the trust funds were to be invested. There was no charge or even a suggestion of any neglect of duty on the part of the trustees. We may say in passing that could the donator of the trust speak he would say to the trustees, "Well done." It may be interesting to quote from the evidence of Mr. Rand to get the viewpoint of the trustees:

"If we meet to discuss the best interests of the hospital and the investment of certain funds that we have, and we reach the conclusion that a definite kind of investment should be made, and then if we have placed on us the restraint that this may be a technical violation of a law, then we are turned from what I consider the high purposes of the Trustees, and we have a warped judgment—that our judgment indicates one thing, but we are turned off of our course by the restriction which we have to follow. . . .

"I am suggesting that it would be helpful to this hospital, if the Trustees felt that they could make an investment in what they believed to be a sound preferred stock or a sound common stock—sound because of the history behind it of continuous success and the reputation for integrity and uprightness—that if we felt free and privileged to make the latter investment, that the hospital would receive greater benefit than from putting its money—making investments in government bonds at a yield that is nominal."

The purpose of the trust was to establish and maintain a hospital. The demands upon the service of this charitable institution were so great that the expense of operation far exceeded the income. It was the desire of the trustees to derive as much income as possible from the funds on hand compatible with the safety of the principal. As Mr. Rand testified, the purpose of the trust would fail if no substantial income were derived from the endowment fund. Therefore the trustees were of the opinion that all of the fund should not be invested in government securities because of the low income it would produce. In this theory the trustees are supported by a number of well reasoned cases. [See Walker v. Buhl, supra; People's State Bank & Trust Co. v. Wade, 269 Ky. 89, 106 S. W. (2d) 74; Morris Community Chest v. Wilentz, 124 N. J. Eq. 580, 3 Atl. (2d) 808, l. c. 810 (4).] In the latter case the court approved the action of the trustees in changing a trust investment from governmental securities to stocks in business enterprises, when it was shown that the governmental securities proved non-productive. The bible also lends support to the theory that it is the duty of trustees to derive an income from a trust fund. In Matthew, chapter 25, paragraph 25, the story is told of a man, desiring to travel, who left his goods with his servants. To the first he gave five talents, to the second two talents, to a third one talent. When he returned he called them to account. The first two had traded with their talents and had profited. The third informed his master that he was afraid and hid the talent in the earth. The master commended the first two, but condemned the third for his slothfulness. The writer desires to apologize for misquoting the above in Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, l. c. 377.

While we were writing this case the current weekly advance sheet of the South Western Reporter arrived. In it we find the case of St. Louis Union Trust Co. v. Toberman et al., 140 S. W. (2d) 68, l. c. 74 (5-7), where the St. Louis Court of Appeals decided "that seasoned corporate stocks are not, as such, improper as a form of investment for money held in trust." A copy of that opinion was filed with this case and it supports our conclusion in every respect. Other Missouri cases lend support to this theory. [See Cornet v. Cornet, 269 Mo. 298, 190 S. W. 333; Drake v. Crane, 127 Mo. 85, 29 S. W. 990; Fairleigh v. Fidelity Nat. Bank & Trust Co. of Kansas

City, 335 Mo. 360, 73 S. W. (2d) 248.] This court in the above cases, while not directly holding that a trustee may invest trust funds in corporate stock, decided the question of liability of trustees, when such investments were made, from the standpoint of whether the trustees exercised due care and not on the theory that corporate stock was as a matter of law improper security in which to invest trust funds. Those decisions, indirectly at least, support respondents' theory.

We therefore rule that where trustees exercise that degree of care and prudence, when making investments of trust funds, as is required by the courts in the cases above cited, and make investments in accordance with the rule as stated in the Restatement Of The Law, on trusts, sections 227, 228, they have discharged their duty. We think the better rule to be that courts should not arbitrarily classify securities as proper or improper for investment of trust funds.

The judgment of the trial court is therefore affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.