Kathryn J. LAW and Gary W. Law, Trustees of the Virginia M. Law Trust, Defendants–Below, Appellants,

v.

William A. LAW, III, Reed A. Law, Annette L. Martin and Eric C. Law, Plaintiffs–Below, Appellees.

No. 337, 1999.

Supreme Court of Delaware.

Submitted: Jan. 11, 2000.
Decided: April 10, 2000.
Rehearing Denied May 30, 2000.

David N. Rutt (argued), Moore & Rutt, P.A., Georgetown, for Appellants.

P. Clarkson Collins, Jr. (argued), Norris P. Wright, and Michael A. Weidinger, Morris, James, Hitchens & Williams LLP, Wilmington, for Appellees.

Before HOLLAND, HARTNETT, and BERGER, JJ.

HARTNETT, Justice.

We hold that the Court of Chancery correctly held that the Appellants, Kathryn and Gary Law, breached their fiduciary duties as Trustees under the Trust created by the will of their mother, Virginia M. Law, because they failed to dispute the incorrect amount of money received to fund the Trust from the Executor and because they failed to timely file the accountings required by Court of Chancery Rule 114. We also hold that the Court of Chancery incorrectly held that the trustees breached their fiduciary duties to the Trust by investing the corpus in tax-exempt government bonds. We therefore **AFFIRM IN PART** and **REVERSE IN PART**.

## I. BACKGROUND

This appeal arises out of the administration of the trust created under the will of Virginia M. Law, who died in 1982. Mrs. Law's will provided that her husband William Law be its executor, that a portion of the proceeds from her estate be distributed to him, and that part of the remainder be held in trust. The corpus of the trust was to be invested by the Trustees and all the income paid to William Law during his lifetime, with the Trustees having the power to invade the principal "if necessary to insure the comfortable support, maintenance, and general welfare" of Mr. Law. The trustees named in the will are the Law's two surviving children, Kathryn and Gary Law. Upon Mr. Law's death, the two Trustees would each receive one-third of the remaining corpus and the remaining one-third would be placed in trust for the four children of the Law's deceased son (the "Remaindermen"), with the same Trustees until the youngest child reached age twenty-five.

Although the language of Mrs. Law's will relating to the residue is unartfully drafted, it directed that if she died in 1982, the Trust be funded with $225,000 and that all administrative costs be deducted from the residuary estate, rather than from any individual bequests.

Mr. Law did not consult legal counsel in his administration of his wife's estate, but

relied upon a certified public accounting firm. Prior to funding the Trust, Mr. Law deducted the debts, administrative expenses and costs of $20,383 from the $225,000 that the will provided would become the principal of the Trust. The Trustees did not question that $204,000 was the correct sum for establishing the corpus of the Trust.

The Trustees invested the corpus of the Trust solely in government tax-free interest-bearing bonds. They never invaded any of the Trust's principal, but annually paid all the income to Mr. Law. It is undisputed that the Trustees did not file the statutory accountings required by 12 Del. C. § 3521 and did not use investment consultants or seek professional advice in their administration of the Trust.

When Mr. Law died on June 14, 1994, the Trust terminated because all of the Remaindermen were above the age of twenty-five. At the time of his death, Mr. Law's personal assets exceeded $1,000,000. The Remaindermen first learned of their interest in the Trust on June 27, 1994, in a letter from the Trustees. On March 14, 1995, the Trustees sent letters to the Remaindermen that contained checks representing their one-third share of the Trust's corpus, including interest that had accrued since the death of Mr. Law.

On June 12, 1995, the Remaindermen filed suit against the Trustees alleging that the Trustees breached their duties in administering the Trust. They claimed that the Trust was funded in an insufficient amount, that the Trustees failed to invest the Trust's corpus as prudent investors and that they failed to file the required

statutory accountings with the Court of Chancery.

The Court of Chancery granted the Remaindermen's cross-motion for summary judgment on the issue of liability on September 30, 1997. The parties agree that there are no issues of material fact. On February 24, 1999, the Vice–Chancellor awarded $394,118.60 in damages, costs and attorney's fees to the Remaindermen and against the Trustees.[1] Final judgment was entered on July 2, 1999.[2]

We review a grant of summary judgment *de novo*.[3] The standard of review by this Court of the Court of Chancery's decision as to an award of damages is determined under an abuse of discretion standard.[4]

## II. FUNDING OF THE TRUST

The Vice–Chancellor held that Mrs. Law's will required that the Trust's corpus should have been funded with $225,000 instead of the $204,610, that Mr. Law turned over to the Trustees after he deducted the estate administrative expenses, taxes and funeral expenses from the $225,000.[5]

The Trustees urge that the Court of Chancery erred in its determination that they bore the responsibility of ensuring that the funding of the Trust was correct because they claim that it was the duty of Mr. Law as executor to distribute the correct assets from Ms. Law's estate to the Trust and because Mrs. Law's will as a matter of law directed that administration expenses be deducted from the amount to be placed in the Trust. Mrs. Law's will provides in part:

1. *Law v. Law*, Del. Ch., C.A. No. 14352, 1999 WL 126997 (Feb. 24, 1999) (Mem.Op.).

2. *Law v. Law*, Del. Ch., C.A. No. 14352 (July 2, 1999) (ORDER).

3. *Emmons v. Hartford Underwriters Inc. Co.*, Del.Supr., 697 A.2d 742, 744 (1997); *Playtex FP v. Columbia Casualty Co.*, Del.Supr., 622 A.2d 1074, 1076 (1992) (holding that a grant of summary judgment cannot be sustained

unless there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law).

4. *Hogg v. Walker*, Del.Supr., 622 A.2d 648, 654 (1993); *Shell Petroleum Inc. v. Smith*, Del.Supr., 606 A.2d 112, 117 (1992).

5. *Law v. Law*, Del. Ch., C.A. No. 14352, 1997 WL 633293 (Sept. 30, 1997) (Mem.Op.).

Item Second: All inheritance, estate and succession taxes (including interest and penalties thereon) payable by reason of my death, shall be paid out of and be charged generally against the principal of my residuary estate without reimbursement from any person...

Item Fifth: I give, devise and bequeath...all the rest, residue and remainder of my estate...in the following manner:

(A) If the time of my death occurs in the calendar year 1982, and the net value of my assets is less than $225,-000.00, then all of such assets are to be placed in trust, as hereinafter set forth. If my assets total more than $225,000.00, then any such excess over and above $225,000.00, I hereby give, devise and bequeath unto my husband, William A. Law...

Mrs. Law died in 1982 and the estate assets exceeded $225,000. The Trustees argue that the will provides that Mrs. Law intended that the costs of administration be deducted from the $225,000, as was done by Mr. Law. To support their contention, the Trustees rely on this Court's decision in *Dutra De Amorim v. Norment*.[6] *Norment* holds that "a seminal rule of trust law is that the trustor's intent controls the interpretation of the instrument in the light of the circumstances surrounding its creation."[7] The Trustees are incorrect in their reliance on *Norment*, however, because although Mrs. Law's primary concern was the support of Mr. Law, her intent that the Trust be funded with $225,000 is clear from the language of her will that specifically provides that the Trust be established with $225,000, as the Court of Chancery correctly determined.[8]

■ The Trustees also allege that it was not their responsibility to ensure that the Trust was established with $225,000 because 12 Del. C. § 2319 provides that Mr. Law, as the executor, bore the responsibility of ensuring adequate funding of the trust. 12 Del. C. § 2319 states in part:

Whenever an executor or administrator makes an assignment of any investment or transfers or delivers any personal property of any testator or intestate to a guardian or trustee as payment in whole or in part of a specific legacy or of a distributive share, such guardian or trustee shall give to the executor or administrator, for the purpose of accounting by the executor or administrator in the settlement of the estate only, a receipt therefor at the valuation fixed in the appraisement of the estate of such testator or intestate...

This statute does not relieve the Trustees of their fiduciary duty to ensure that the Trust was adequately funded.[9] In order to have met their fiduciary duty, the Trustees should have questioned why the Trust was funded with less than $225,000 as mandated by Mrs. Law's will. The damages for this breach should be $6,794.33, representing the Remaindermen's actual one-third interest in the Trust, and not the entire $20,382..

### III. TRUSTEE'S INVESTMENT STRATEGY

■ The Vice–Chancellor also held that the Trustees breached their duty of impartiality owed to the Remaindermen by investing the Trust's assets in government tax free fixed-income securities that only produced income for Mr. Law, as opposed

---

6. Del.Supr., 460 A.2d 511 (1983)

7. *Id.* at 514.

8. "The intent is determined by considering the language of the instrument, read as an entirety, in light of the circumstances surrounding its creation." *Norment* at 514.

9. *Wilmington Trust Co. v. Coulter,* Del.Supr., 200 A.2d 441 (1964) (holding that a trustee's duty to trustee's beneficiaries in administering the trust is to exercise the care and skill a person a person of ordinary prudence would exercise in dealing with a person's own property in the light of the situation existing at the time).

to pursuing an investment strategy that would have increased the Trust's corpus.[10]

The will provides: "For and during the lifetime of my husband, William A. Law, if he survives me, my said Trustees shall pay the net income of the trust to and for the use of my said husband and, in addition, if necessary to insure the comfortable support, maintenance and general welfare of my said husband, my said Trustees shall invade the principal of the trust for such purpose." The Trustees argue, therefore, that they fully complied with the terms of the Trust.[11]

The Trust's assets were invested in tax-free government bonds and all the income from these bonds was paid to Mr. Law annually. The Trustee's investment strategy therefore, although not increasing the Trust's corpus, guaranteed that it be preserved while producing tax-free income for Mr. Law.

The Remaindermen argue that the Trustees had a fiduciary duty to ensure that the Trust's corpus grew, relying on *Gans v. MDR Liquidating Corp.*[12] *Gans* however, in the context of a liquidating trust, held only that a trustee, in the interests of safety, has a duty to diversify trust assets, except when it would be imprudent to diversify.[13] Delaware law does not provide a set monetary figure that requires a trustee to diversify a trust's corpus.

The Remaindermen at trial produced two expert witnesses who testified how a professional trustee would have correctly invested the Trust's assets.[14] The Vice–Chancellor primarily relied on the testimony of P.M. Snyder, in holding that the Trustees should have invested either 50% or 60% of the Trust's corpus in a Standard & Poor's 500 index fund while paying the dividends to the life beneficiary, Mr. Law.[15] This would likely have been less favorable to Mr. Law. The Vice–Chancellor's holding resulted in his award to the Remaindermen of $276,855[16] in damages based on a hypothetical scenario in which the Trustees, during the duration of the Trust, invested the Trust's corpus based on a $^{50}\!\!/_{\!50}$ split between investments representing equity and debt.[17]

As this Court held in *Wilmington Trust Co. v. Coulter*[18], trustees are held to a prudent investor standard in the management and investment of a trust's assets or property. In managing trust property, trustees must act with skill, care, diligence and prudence in light of the circumstances.[19] A non-professional trustee's duty to the beneficiaries in administering a trust is to exercise the skill and care that a man of ordinary prudence would exercise in dealing with his own property in light of the situation existing at the time.[20] In addition to correctly administering the trust, a trustee also must ensure the integ-

**10.** *Law v. Law*, Del. Ch., C.A. No. 14352, 1997 WL 633293 (Sept. 30, 1997) (Mem.Op.) at 8.

**11.** *Dupont v. Equitable Sec. Trust Co.*, Del. Supr., 122 A.2d 429, 433 (1956) (holding that a seminal rule of trust law is that the trustor's intent controls the interpretation of the instrument in light of the circumstances surrounding its creation); *DuPont v. Delaware Trust Co.*, Del.Supr., 320 A.2d 694 (1974) (holding that not only must a trustee deal with trust property with ordinary prudence, he must avoid even those risks he might take with his own property and must take no risk which endangers integrity of trust corpus); *Norment* at 514.

**12.** Del. Ch., C.A. No. 9630, 1991 WL 114514, Hartnett, V.C., (June 25, 1991) (Mem.Op.)

**13.** *Id.*

**14.** *Law v. Law*, Del. Ch., C.A. No. 143529, 1999 WL 126997 (Feb. 24, 1999) (Mem.Op.).

**15.** *Law v. Law*, Del. Ch., C.A. No. 143529, 1999 WL 126997 (Feb. 24, 1999) (Mem.Op.) at 6–7.

**16.** We assume that this sum represents only the one-third interest of the Remaindermen.

**17.** *Id.* at 23.

**18.** Del.Supr., 200 A.2d 441 (1964).

**19.** *Id.*

**20.** *Id.* at 448.

rity of the corpus.[21] A trustee, however, is not liable to a beneficiary for following a specific investment strategy to the extent that the trustee acted in reasonable reliance on the terms of the trust.[22] And in reviewing the administration of a trust, we must consider the trustor's intent when the trust was created.[23] The conduct of a trustee in administering the trust is generally not determined to be a violation of a fiduciary duty if it was based on hindsight knowledge of subsequently developed facts and circumstances.[24]

The Court of Chancery's determination that the Trustee's breached their fiduciary duty because they invested the Trust's assets in tax-free government bonds relied on hindsight. The hindsight review of a trustee's investments of the assets of a trust is difficult because an investment strategy may involve numerous value judgments in a Trustee's attempt to balance the safety of the investment against its return and no one can predict with certainty how particular investments will turn out. In the past, trustees were expected to preserve principal as their primary strategy for investment and many courts

have held that a trustee was not allowed to invest in stocks, bonds or other securities of a private corporation without permission in the terms of a trust or in a statute.[25] This would have been considered the essence of prudence.[26]

The testimony of the experts that was based on a hypothetical analysis of what investment strategy the Trustees should have used for the Trust's assets is not persuasive. The Trustees cannot be held to the same standard of care as suggested by the Remaindermen's expert witness because they are not professional trustees or investors.[27]

The Trustees were selected by their mother who knew they did not have a greater skill than a person of ordinary prudence.[28] Their acts therefore must be reviewed under the duty to exercise such reasonable care and skill as a man of ordinary prudence would exercise in dealing with his own property.[29]

The Remaindermen rely on 12 Del. C. § 3302 to bolster their argument that the Trustees breached a fiduciary duty by not investing the Trust's assets for the pur-

**21.** *DuPont v. Delaware Trust Co.*, Del.Supr., 320 A.2d 694 (1974) (holding that not only must a trustee deal with trust property with ordinary prudence, he must avoid even those risks he might take with his own property and must take no risk which endangers integrity of the trust corpus).

**22.** *Restatement (Third) of Trusts: Prudent Investor Rule* § 228(b) (1990).

**23.** *Dupont v. Equitable Sec. Trust Co.*, Del. Supr., 122 A.2d 429, 433 (1956) (holding that a seminal rule of trust law is that the trustor's intent controls the interpretation of the instrument in light of the circumstances surrounding its creation); *Restatement (Third) of Trusts: Prudent Investor Rule* § 227(c)(1) (1990).

**24.** *Wilmington Trust v. Coulter*, 200 A.2d 441 (1964); *In re Cook's Trust Estate*, Del.Ch., 171 A. 730 (1934).

**25.** *See Morris Community Chest v. Wilentz*, 124 N.J. Eq. 580, 3 A.2d 808 (1939); Annotation: 122 ALR 664.

**26.** *DuPont v. Delaware Trust Co.*, Del.Supr., 320 A.2d 694 (1974).

**27.** *Wilmington Trust v. Coulter*, 200 A.2d 441 (1964).

**28.** *Restatement (Second) Trusts* § 174; *Duty to Exercise Reasonable Care and Skill:* The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill.

**29.** 12 Del. C. § 3302(a); *Wilmington Trust v. Coulter*, 200 A.2d 441 (1964) (holding that a trustee's duty to trustee's trust and to trustee's beneficiaries in administering the trust is to exercise the care and skill a person of ordinary prudence would exercise in dealing with a person's own property in the light of the situation existing at the time).

pose of increasing its corpus. When the Trustees began administering the Trust, 12 Del. C. § 3302 provided:

> In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, fiduciaries shall exercise the judgment and care under the circumstances then prevailing which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, fiduciaries may acquire and retain every kind of property, real, personal or mixed, and every kind of investment, specifically including but not by way of limitation, bonds, debentures and other corporate obligations and stocks, preferred or common, shares or interests in common funds or common trust funds, and securities of any open-end or closed-end management type investment company or investment trust registered under the Federal Investment Company Act of 1940, which men of prudence, discretion and intelligence acquire or retain for their own account and within the limitations of the foregoing standard, fiduciaries may retain property properly acquired, without the limitation as to time and without regard to its suitability for original purpose.

In 1982 the Trustees began investing the Trust's assets in compliance with the then existing statute and Delaware case law.[30] In 1986, the Delaware General Assembly amended 12 Del. C. § 3302 to add in part:

> (c). The propriety of an investment decision is to be determined by what the fiduciary knew or should have known at the time of the decision about the inherent nature and expected performance of the investment, the attributes of the portfolio, the general economy, and the needs and objectives of the beneficiaries of the account as they existed at the time of the decision. Any determination of liability for investment performance shall consider not only the performance of a particular investment, but also the performance of the portfolio as a whole.
>
> (d). Any fiduciary acting under a governing instrument shall not be liable to anyone whose interests arise from the instrument for the fiduciary's good faith reliance on the express provisions of such instrument. The standards set forth in this section may be expanded, restricted or eliminated by express provisions in a governing instrument.

The focus of the statute appears to be the protection of the trustee.

In today's economic environment, much can be said for an approach that broadens the ability of a trustee to balance considerations of safety with a desire to increase principal. We find, however, that the amended statute did not preclude the continuing of the investment decisions made by the Trustees, when all the facts and circumstances are considered.

After viewing all the facts and circumstances, including the size of the trust, the language of the will, the intent of Mrs. Law, the family nature of the Trust, the family relationship of the Trustees and beneficiaries to Mrs. Law, and that the Trustees were the beneficiaries of a two-thirds remainder interest in the Trust, we find that the Trustees acted with the same care and skill as a man of ordinary prudence would have exercised in dealing with his own property and the investment strategy chosen did not constitute a breach of trust.[31]

## IV. THE TRUST ACCOUNTING

The Court of Chancery further held that the Trustees breached the Trust because they failed to provide the Remaindermen with the statutory accountings of

---

30. *Wilmington Trust v. Coulter*, 200 A.2d 441 (1964); *DuPont v. Delaware Trust Co.*, Del. Supr., 320 A.2d 694 (1974).

31. *Wilmington Trust Co. v. Coulter*, 200 A.2d 441 (1964).

the Trust, in violation of Court of Chancery Rule 114.[32] That rule requires, unless the will otherwise provides, that Trustees submit bi-annual accountings of their administration of a trust created by a will to the Court of Chancery, showing all receipts, disbursements and investments made on behalf of the trust.

The Trustees contend that the Court of Chancery incorrectly found a violation of the accounting duty because after the death of Mr. Law they provided all relevant information to the Remaindermen upon their request. The Trustees further claim that because Mr. Law received 100% of the income produced from the Trust's corpus and they did not deduct any fees or expenses from the Trust, no need existed for them to file bi-annual accountings with the Court of Chancery. The Trustees also contend that their failure to file accountings with the Court of Chancery is harmless error because they eventually provided the Remaindermen with a breakdown of the Trust's assets.

The Court of Chancery held that the Trustees failure constituted a breach of trust because they made no effort to comply with the rule until after the death of Mr. Law.[33] We agree and find that the failure was not harmless error because if the accountings had been timely filed, as required by the rule, the Remaindermen could have sought to have had the Trustees change their investment strategy and this lawsuit might have been avoided. We therefore affirm the Court of Chancery's holding that the Trustees violated Court of Chancery Rule 114.[34]

## V. DAMAGES AND ATTORNEYS FEES

Lastly, the Trustees allege that the Court of Chancery erred as a matter of law in its determination that the Remaindermen were entitled to damages and costs because there was no breach of a fiduciary duty.

The Court of Chancery awarded damages of $307,157.60, expert witness fees of $5,300, and attorney fees of $81,661 based on its holding that the Trustees breached their fiduciary duties.[35] We have found, however, that there were only two breaches of trust. The first was the failure of the Trustees to insist on the full $225,000 being paid to fund the Trust.· This resulted in damages to the Remaindermen of $6,794.33. The other breach of trust occurred when the Trustees failed to timely file the accountings required by Chancery Court Rule 114. The only possible damages that could result from that failure, however, would be the costs expended by the Remaindermen in ultimately receiving the accountings because we have held that the investment strategy of the Trustees did not constitute a breach of trust.

The award by the Court of Chancery of damages, expert witness fees and attorney fees therefore must be reviewed by the Court of Chancery in light of the holdings herein.

**NOW THEREFORE, IT IS ORDERED** that the judgment of the Court of Chancery be, and the same is **AFFIRMED IN PART; REVERSED IN PART;** and **REMANDED** for further findings in accordance with this opinion. Jurisdiction is not retained.

**32.** *Law v. Law,* Del. Ch., C.A. No. 14352, 1997 WL 633293 (Sept. 30, 1997) (Mem.Op.) at 10.

**33.** *Law v. Law,* Del. Ch., C.A. No. 14352, 1997 WL 633293 (Sept. 30, 1997) (Mem.Op.) at 10.

**34.** *Law v. Law,* Del. Ch., C.A. No. 14352, 1997 WL 633293 (Sept. 30, 1997) (Mem.Op.) at 10;

*Bankers Trust Co. v. Duffy,* Del.Supr., 295 A.2d 725 (1972) (holding that 12 Del. C. § 3521 and Court of Chancery Rule 114 requires trustees of testamentary trusts to provide accountings to the Court of Chancery).

**35.** *Law v. Law,* Del. Ch., C.A. No. 14352, 1999 WL 126997 (Feb. 24, 1999) (Mem.Op.) at 2.