In the Matter of the UNFUNDED IN-
SURANCE TRUST AGREEMENT OF
Emilio M. CAPALDI, Deceased.

Lawrence J. Capaldi and Joseph
M. Capaldi, Petitioners
Below, Appellants,

v.

Roseanna Richards, Joseph L. Capano,
Sr. and Laurie Mason, guardian of
Rose M. Capaldi, a disabled person,
Respondents Below, Appellees.

No. 293, 2004.

Supreme Court of Delaware.

Submitted: Dec. 15, 2004.

Decided: March 4, 2005.

David J. Ferry, Jr., Rick S. Miller (argued) of Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Petitioners Below–Appellants.

Adam Balick of Balick & Balick, Wilmington, DE, for Trustee Joseph L. Capano, Appellee.

Richard H. Cross, Jr. (argued) and Amy Evans of Cross & Simon, L.L.C., Wilmington, DE, for Appellee Roseanna Richards.

Before STEELE, Chief Justice, HOLLAND, Justice, and VAUGHN, President Judge.*

STEELE, Chief Justice:

In this trust litigation, co-beneficiaries Lawrence and Joseph Capaldi appeal a

* Sitting by designation pursuant to Del. Const.   Art. IV § 12.

judgment of the Court of Chancery restructuring the Emilio M. Capaldi Trust. Lawrence and Joseph claim that the Vice Chancellor erred by retaining Appellee Joseph Capano as trustee, by directing that Capano's attorneys' fees and costs be paid by the trust, and by ordering them to pay their own fees and costs. Because Capano, despite several instances of poor judgment, did not perform grossly negligently, and because his overall actions benefited the trust, we find that the Vice Chancellor acted within his discretion when he retained Capano as trustee and when he ordered Capano's attorneys' fees and costs to be paid from the trust. But because the Vice Chancellor inappropriately overweighed Lawrence and Joseph's motivation in instituting and pursuing the underlying litigation and undervalued the improvements to the administration of the Trust resulting from the litigation, we find that he abused his discretion when he denied Lawrence and Joseph their attorneys' fees and costs. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

### I.

In January 1959, Emilio M. Capaldi, the sole shareholder of Independence Mall Inc., established a trust to care post-humously for his wife, Rose, and their three children: Roseanna Capaldi Richards, Lawrence Capaldi, and Joseph Capaldi. Funded by 100 percent of Independence Mall's issued and outstanding stock, the Capaldi Trust provides income to Rose for life, with the remainder to the children. By its terms, the Capaldi Trust is subdivided into a marital trust, holding 48 percent of Independence Mall stock, and a residual trust, holding the remaining 52 percent. The marital trust exclusively permits Rose to invade its principal.

The Bank of Delaware, now PNC Bank, originally served as trustee. In 1992, Capano and Albert Vietri, replaced PNC. Seeking to pay off debts Rose had incurred over the years and to fund various capital improvements, Capano and Vietri refinanced the mall in 1995 and invested $650,000 in a certificate of deposit for Rose. Later that year, Capano assisted Lawrence in obtaining a $100,000 loan from the mall by using Rose's certificate as collateral.

By 1999, five trustees were managing the trust: Lawrence, Joseph, Richards, Capano, and Rose. Despite the siblings' new presence as trustees, Capano unilaterally modified the refinancing and converted Independence Mall into an S Corporation. Two years later, with Rose's health deteriorating, Lawrence and Joseph petitioned the Court of Chancery to appoint a guardian for Rose. Although initially opposed by Richards and Capano, all parties eventually agreed to a stipulated guardianship order. A Vice Chancellor approved the stipulation and appointed Richards guardian of Rose's person and another, Laurie Mason, guardian of Rose's property.

Lawrence and Joseph filed a second petition in the Court of Chancery in December 2003. In their petition, they sought relief from the guardianship order on four grounds. Specifically, the brothers sought to: (1) invade the trust principal to pay all attorneys' fees associated with the guardianship proceeding; (2) appoint an independent trustee to serve in Richards' place or to serve as sole trustee; (3) deny Richards' request for compensation associated with Rose's care; and (4) remove Richards as Rose's guardian. In response, Richards filed a cross-petition to remove Lawrence as trustee, based in part on his failure to repay the earlier loan in full.

In April 2004, a Vice Chancellor entered a consent order removing Lawrence, Joseph, and Richards as trustees.[1] He declined to remove Capano, however, noting Capano's extensive experience in operating the mall. The Vice Chancellor also appointed two independent trustees, directing them to prepare a comprehensive report detailing the future operation of the trust. He also reduced Richards' compensation for expenses related to Rose's care.

Finally, finding that the Capaldi children acted solely out of self-interest during the litigation, the Vice Chancellor ordered Lawrence, Joseph, and Richards to pay their own attorneys' fees and costs. However, because of Capano's years of uncompensated service, the Vice Chancellor directed that Capano's fees and costs be paid out of the trust. Lawrence and Joseph now appeal, contending that the Vice Chancellor erred when he declined to remove Capano as trustee, by awarding Capano attorneys' fees and costs, and by failing to award the brothers' own fees and costs.

## II.

■ The Court of Chancery enjoys plenary equitable power over the supervision of trusts.[2] In the exercise of this power, a Vice Chancellor may only remove a trustee "who fails to perform his duties through more than mere negligence."[3] The Court of Chancery, however, "has broad latitude to exercise its equitable powers to craft a remedy."[4] We review the refusal to remove a trustee for abuse of discretion.[5]

■ In trust litigation, the Vice Chancellor has the discretion to award attorneys' fees to any party.[6] The award of fees is proper where the attorney's services are necessary for the proper administration of the trust or the services benefited the trust.[7] "The usual rule [provides] that trustees who defend litigation against the trust are entitled to look to the trust for reimbursement of that expense."[8] We review a decision to award attorneys' fees for abuse of discretion.[9]

## III.

### A. Capano as Trustee

Lawrence and Joseph first argue that the Vice Chancellor erred when he refused to remove Capano as trustee. They claim that Capano should be removed because he failed to exercise ordinary prudence in refinancing the mall. The brothers also contend that Capano breached his duty of impartiality and improperly made certain decisions unilaterally. According to Law-

1. *In re Capaldi*, Del. Ch., C.A. 6735 (June 10, 2004) (ORDER).

2. *McNeil v. McNeil*, 798 A.2d 503, 509 (Del. 2002), *citing Law v. Law*, 753 A.2d 443, 445 (Del.2000).

3. *McNeil*, 798 A.2d at 513, *citing In re Catell's Estate*, 38 A.2d 466, 469 (Del.Ch.1944).

4. *Hogg v. Walker*, 622 A.2d 648, 654 (Del. 1993).

5. *See McNeil*, 798 A.2d at 513.

6. 12 *Del. C.* § 3584.

7. *Bankers Trust Co. v. Duffy*, 295 A.2d 725, 726 (Del.1972), *citing* RESTATEMENT (SECOND) OF TRUSTS § 188 (1959). *See generally* Annotation, *Award Of Attorneys' Fees Out Of Trust Estate In Action By Trustee Against Cotrustee*, 24 A.L.R.4TH 624 (2004) (collecting cases).

8. *McNeil*, 798 A.2d at 515, *see also* 3 SCOTT ON TRUSTS § 188.4 (William F. Fratcher ed. 1988) (summarizing the general rule that a trustee's litigation expenses should be borne by the trust when the trustee must defend against a claim that "may result in a loss to the trust estate") [hereinafter SCOTT].

9. *McNeil*, 798 A.2d at 514–15.

rence and Joseph, these decisions negatively affected the trust and therefore justified Capano's removal.

■ As the Vice Chancellor recognized, Capano's decisions to borrow against the mall to fund capital improvements and to pay Rose's debts were questionable. But those decisions, without more, do not constitute gross negligence, if they were negligently made at all. The Vice Chancellor also acknowledged that Capano did not appreciate the procedural nuances of trust formalities. To address these shortcomings, the Vice Chancellor appointed two independent and experienced trustees. By retaining Capano, with his managerial experience, alongside two additional trustees, the Vice Chancellor properly and thoughtfully exercised his authority to optimize sound management of the trust. Based on this record, we can find no abuse of discretion.

## B. Capano's Attorneys' Fees and Costs

■ Next, Lawrence and Joseph assert that the Vice Chancellor abused his discretion when he ordered that Capano's attorneys' fees and costs be paid from the Trust's corpus. Specifically, they claim that the Vice Chancellor erred when he failed to consider Capano's mismanagement which caused the underlying litigation and by minimizing Capano's breach of fiduciary duties owed to the trust and the beneficiaries.

The Vice Chancellor found, however, that, despite several questionable decisions, Capano's conduct benefited the trust. In arriving at that conclusion, the Vice Chancellor noted that Capano's years of uncompensated service demonstrated an overall commitment to Rose's best interests. The record supports that conclusion.

We find that by adhering to the general rule that a trustee is entitled to attorneys' fees when defending a trust and his own actions as trustee, the Vice Chancellor properly exercised his discretion when he awarded Capano attorneys' fees and costs.[10]

## C. Lawrence and Joseph's Fees and Costs

■ Finally, Lawrence and Joseph contend that the litigation they initiated and pursued served to benefit the trust and resulted in better administration of the trust. As a result, the Vice Chancellor erred when he refused to order the Trust to pay their attorneys' fees and costs. The brothers assert that even if, as the Vice Chancellor found, they were acting solely in their own interest and independently from the trust, they still conferred a benefit on the trust by instituting the underlying litigation. In support of this contention, Lawrence and Joseph maintain that the two independent and qualified trustees the Vice Chancellor appointed directly resulted from the litigation they initiated and ensured the efficient operation of the trust in the future. By successfully decreasing Richards's compensation, moreover, the brothers note that the litigation benefited the trust by reducing administrative costs associated with Rose's care.

In his decision, the Vice Chancellor found that self-interest alone motivated the Capaldi children, including Richards, when they instituted and pursued the underlying litigation. He reasoned that judicial intervention and resulting action, without more, cannot constitute a benefit to the trust. According to the Vice Chancellor, any benefit conferred was "wholly incidental and subordinate" to the siblings' personal motivations.[11]

---

10. See *McNeil,* 798 A.2d at 515; Scott § 188.4.

11. *In re Capaldi,* Del. Ch., C.A. 6735 (April 19, 2004) (transcript), at 29–30.

In analyzing whether the parties or The Trust should bear the costs of litigation, the motives to initiate litigation and the benefits litigation confers on a trust, even when arguably incidental, begin as equal components of the decisionmaking process. Seeking a judicial resolution of disputes may confer a benefit on the trust regardless of the parties' motives. Any formula that by default values one over the other, however, compromises the paramount concern of trust law: the welfare of the trust itself. A proper cost-benefit analysis assesses both the benefit incurred and the motives behind the litigation.

There may be circumstances where the negative effects of a trustee or beneficiary's personal motives outweigh any incidental trust benefit produced by litigation. A beneficiary, for example, may institute an action seeking to prematurely end or otherwise irrevocably alter a trust instrument solely in its own pecuniary interest.[12] Under these circumstances, the balancing of benefit and motive is properly within the broad discretion accorded to the Vice Chancellor.

But the two factors must be given equal weight at the outset of the process. A Vice Chancellor cannot dismiss the benefits conferred out of hand simply because they flow from litigation motivated by self-interest as a beneficiary.[13] Residual beneficiaries of a remainder trust necessarily have a motivation to see the trust properly administered. Although here Lawrence and Joseph's motivations diverged from the interests of their co-beneficiaries, and each other, the record nonetheless demonstrates that the litigation they initiated conferred a benefit on the Trust, both by reducing its administrative costs and by reconfiguring its governance structure. A Vice Chancellor is not free to discount litigation benefits solely because they are incidental to the plaintiffs' interest, even where unintended by them. We therefore find that, because he devalued the benefits Lawrence and Joseph's litigation conferred on the Trust when they instituted and pursued the action, the Vice Chancellor abused his discretion by rejecting any claim the brothers had to attorneys' fees and costs.

### III.

For these reasons, the judgment of the Court of Chancery retaining Capano as trustee and awarding Capano his attorneys' fees and costs is **AFFIRMED**. The judgment of the Court of Chancery denying attorneys' fees and costs to Lawrence and Joseph Capaldi is **REVERSED** and **REMANDED** for proceedings consistent with this Opinion.

---

12. *See* Annotation, *Allowance Of Attorneys' Fees In, Or Other Costs Of, Litigation By Beneficiary Respecting Trust,* 9 A.L.R.2D 1132 (2004) (collecting and contrasting case law examining litigation brought to benefit trust and case law brought to benefit trustees and beneficiaries).

13. *Compare McNeil,* 798 A.2d at 514 (noting that in awarding fees to defending trustee, Vice Chancellor must balance extent of trustee's breach of duty with any resulting benefit litigation conferred), *with Van Gorden v. Lunt,* 234 Iowa 832, 13 N.W.2d 341, 346 (Iowa 1944) ("[O]ne jointly interested with others in a common property or fund, *who in good faith maintains the necessary litigation to preserve it or secure its proper administration,* is entitled to be reimbursed out of the common property or fund for the reasonable cost of the litigation.") (emphasis added). *Cf. Wilmington Trust Co. v. Coulter,* 208 A.2d 677, 682 (Del.Ch.1965) (stating, in context of trustee activity, that courts assess fees and costs against individuals only when their conduct "has been of a gross or inexcusable nature.").