IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SARAH R. GRAHAM, | § | |
| | § | No. 86, 2020 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below—Court of |
| | § | Chancery of the State of |
| v. | § | Delaware |
| | § | |
| DAVID C. GRAHAM, | § | C.A. No. 2018-0084 |
| | § | |
| Defendant Below, Appellee. | § | |

Submitted: January 8, 2021
Decided:    March 5, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The *pro se* appellant, Sarah Graham, appeals from a decision of the Court of Chancery that, among other things, denied Sarah's[1] exceptions to a trust accounting.  The appellee, David Graham, is Sarah's father and is the trustee of a trust created by his deceased wife, Sarah's mother.  After careful review of the parties' briefs and the record on appeal, we affirm.

---

[1] For clarity, we use first names to refer to the individuals discussed in this dispute between family members.  We intend no disrespect.

**Factual Background**

(2)     Sarah's mother, Helen F. Graham, was diagnosed with cancer in September 1999 and died on December 31, 1999.  Two draft trust agreements were prepared for Helen before her death, but she never executed either document.[2]  The terms of the two draft agreements were largely the same.  Both documents named David as the initial successor trustee.[3]  Both documents provided that, if David survived Helen, for David's lifetime the trustee would pay to David "the entire net income of the Trust Estate" and "so much of the principal of the Trust Estate as the Trustee, in his sole discretion, shall deem necessary for the health, education, support, or maintenance of [David]."[4]  The documents differed in two respects.  First, the earlier draft provided that Sarah and her sister (or the survivor of them), both of whom were young adults at the time of Helen's death, would succeed David as trustee;[5] the later draft provided that C. Michael Cawley, III, would succeed David as trustee.[6]  Second, the later draft provided David with a power of appointment that would allow him, upon his death, to appoint the entire balance of the trust estate to Helen's issue and their spouses, in such manner and such amounts, and on such terms, as David determined.[7]  To the extent that David did not exercise the power of

---

[2] The documents appear in the Appendix to the Answering Brief at B-22-32; B33-43.
[3] *Id.* at B-29; B-41.
[4] *Id.* at B-23; B-34.
[5] *Id.* at B-29.
[6] *Id.* at B-41.
[7] *Id.* at B-34.

appointment, the document directed the trustee to divide the balance of the trust estate per stirpes upon David's death. The earlier draft did not include the power of appointment and directed the trustee to divide the balance of the trust estate per stirpes upon David's death.

(3)    On February 7, 2018, Sarah filed a petition in the Court of Chancery in which she sought a trust accounting and David's removal as trustee. The petition acknowledged the existence of both draft trust agreements and alleged that Helen had accepted the later draft under Delaware's oral trust laws.[8] It also alleged that, if David were removed as trustee, Cawley would become the trustee, as provided in the later draft trust agreement. Although David initially disputed the existence of a trust, he later conceded that a trust existed under the terms of the later draft agreement and agreed to provide an accounting.[9]

[8] Title 12, Section 3545 of the Delaware Code—which became effective January 1, 2001, after Helen's death—imposed statutory limitations on the oral creation, modification, or revocation of a trust.

[9] In light of David's concession, the Court of Chancery focused its analysis on the terms of the later draft. To the extent that Sarah argues on appeal that the court should have applied the terms of the earlier draft, we find no reversible error. Sarah's petition asserted that Helen accepted the later draft under the oral trust laws, and David conceded that a trust existed under the terms of the later draft. Moreover, the provisions governing income and principal distributions during David's lifetime were the same in both drafts, and the differing provisions identifying the trustees to succeed David are not at issue because of the trial court's determination that David would not be removed as trustee.

3

*The First Accounting*

(4)     On April 29, 2019, David filed an accounting covering the period from the initial funding of the trust through December 31, 2018, and moved for entry of judgment in his favor.  Sarah took exception to the accounting and opposed the motion.  On September 19, 2019, the Court of Chancery issued a letter decision that denied David's motion for entry of judgment in his favor and ordered him to complete a supplemental accounting.[10]

(5)     In the September 2019 decision, the Court of Chancery found that Sarah was a taker in default of David's exercise of the power of appointment set forth in the trust instrument.  It therefore held that she had standing to compel an accounting and to challenge David's performance of his duties as trustee.  The Court of Chancery then reviewed Sarah's exceptions to the accounting.  First, Sarah challenged a $100,000 distribution made to David on June 3, 2009 and a $100,000 distribution made to David on March 1, 2010.  The court determined that David had not sufficiently accounted for those distributions and ordered him to provide a supplemental accounting.  Sarah also disputed hundreds of thousands of dollars of gifts that David claimed to have given to Sarah and her sister.  The court determined that those gifts were not distributed from the trust and therefore concluded that Sarah's arguments concerning those gifts were not relevant to the issue of whether

---

[10] *Graham v. Graham*, 2018-0084-MTZ, Docket Entry No. 73 (Del. Ch. Sept. 19, 2019).

David breached his duties as trustee. Finally, the court held that David owed Sarah a duty to inform her that she was a beneficiary of the trust and that he breached that duty by not telling her about the trust from the time of the trust's creation in 1999 until October 2017. The court stated that it would impose a surcharge against David, in an amount to be determined after the completion of the supplemental accounting.

*The Supplemental Accounting*

(6) David filed a supplemental accounting on October 18, 2019; Sarah then filed exceptions. In a letter decision issued on January 30, 2020,[11] the Court of Chancery determined that the supplemental accounting satisfied David's duty to account for the two $100,000 distributions. Specifically, the court found that construction invoices and QuickBooks records showed that David used the distributions to pay for construction on his primary residence. The court determined that the trust gave David broad, sole discretion to expend principal for his health, education, support, or maintenance, and that David acted within that discretion when distributing the $200,000 for the construction of a home.

(7) With respect to attorneys' fees, the court held that David was entitled to have the trust pay the reasonable fees he incurred in the litigation. But the court concluded that, in light of its determination that the first accounting was insufficient to demonstrate the propriety of the $200,000 distributions, David himself was

---

[11] *Graham v. Graham*, 2018-0084-MTZ, Docket Entry No. 78 (Del. Ch. Jan. 30, 2020).

5

required to bear the fees incurred for preparing and submitting the supplemental accounting. The court also held that the trust would reimburse Sarah's costs in the litigation, which benefited the trust by causing a complete accounting.

(8) Next, the court addressed the remedy for David's breach of his duty to inform Sarah of the existence of the trust. The court stated that "[w]hile Sarah has no current right to trust funds (or future right in the absence of an exercise of the power of appointment in her favor or its default), her right to be informed has its own significance."[12] The court found that Sarah "suffered no tangible harm" from the David's failure to inform her of the trust; it therefore imposed a surcharge on David of $500 per year for each year from 1999 through 2017, ordering David to pay Sarah those funds from his own sources and not the trust.[13]

(9) Finally, the court denied Sarah's request to remove David as trustee. The court concluded that, although the initial accounting was insufficient and he breached his duty to inform, he had guarded the trust corpus and made distributions within the bounds of his discretion under the trust. The court therefore found that removal was not necessary to secure the trust against loss or misapplication.[14]

---

[12] *Id.* at 8-9.
[13] *Id.* at 9.
[14] *Id.* at 10 (quoting *Massey v. Stout*, 1871 WL 2090, at *4 (Del. Ch. Sept. 1, 1871) ("The Court of Chancery has exercised its power for the removal of trustees appointed by will or deed very sparingly. The principle maintained is, that there must be a clear necessity for its interference, in order to secure the trust fund against loss or misapplication.")). *See also McNeil v. McNeil*, 798 A.2d 503, 513 (Del. 2002) ("The Court of Chancery has the power to remove a trustee as ancillary to its duty to see that the trust is administered properly. While that authority should be exercised

6

**Issues Raised on Appeal**

(10) Sarah has appealed to this court. On appeal, she argues that the Court of Chancery erred by (i) accepting the accounting based on insufficient evidence; (ii) imposing an insufficient remedy for David's failure to inform Sarah of the existence of the trust; (iii) determining that David did not otherwise breach his duties as trustee; and (iv) holding that David's attorneys' fees, other than those incurred in preparing the supplemental accounting, could be paid by the trust. We conclude that none of Sarah's arguments warrants reversal.

(11) Sarah argues that David provided insufficient documentation to support the accounting. David was unable to obtain original documents, such as bank statements, to correspond to every transaction over a twenty-year period. Based on his presentation of a combination of available statements, QuickBooks records, invoices, and other information, however, the Court of Chancery concluded that he had satisfied his burden of proving that the distributions—including the disputed $200,000 construction distributions—were made for David's health, education, support, or maintenance as the lifetime beneficiary of the trust. In the circumstances of this case, we find no basis for reversal of the Court of Chancery's conclusions.

---

sparingly, the court enjoys the discretion to remove a trustee who fails to perform his duties through more than mere negligence." (internal quotations and citation omitted)).

(12) Sarah asserts that the Court of Chancery imposed an insufficient remedy for David's failure to inform Sarah of the existence of the trust.[15] She contends that she and her children lived in an uninhabitable house and endured other negative circumstances as a result of her unawareness of the trust. The Court of Chancery has broad discretion to determine the appropriate remedy for a breach of a trustee's duties.[16] Sarah had no entitlement to any distributions from the trust during David's lifetime. Thus, we agree with the Court of Chancery's conclusion that she suffered no tangible harm from being unaware of the existence of the trust, and we find no abuse of discretion in the court's award to Sarah of $500 for each year that she remained unaware of the trust.[17]

(13) Sarah also contends that the Court of Chancery erroneously determined that David did not otherwise breach his duties as trustee. Many of her arguments relate to the failure to inform; because the Court of Chancery ruled in Sarah's favor on the duty to inform issue, those arguments provide no basis for reversal. Relying

---

[15] David has not appealed the court's holding that he had a duty to inform Sarah, a taker in default of the exercise of the power of appointment with no current right to income or principal, of the existence of the trust. For purposes of this appeal, we therefore assume, as the Court of Chancery determined, that David owed and breached such a duty.

[16] *McNeil v. McNeil*, 798 A.2d 503, 509 (Del. 2002).

[17] Sarah's challenges to various "gifts" that David claimed to have given her—such as rent-free use of property that David owned—also do not warrant reversal. Our review of the accounting confirms that, although David identified these gifts within the accounting paperwork in an attempt to persuade the court of his generosity to Sarah over the years, the accounting does not reflect that the gifts constituted disbursements from the trust or otherwise reduced the balance of the trust.

8

on *McNeil v. McNeil*,[18] Sarah argues that David breached his obligation to consider the interests of future generations when making distributions from the trust. *McNeil* resolved claims brought by a current beneficiary of a trust[19] and therefore is distinguishable from the facts of this case, in which Sarah has no current right to income or principal and David has broad discretion to use the income and principal for his health, education, support, or maintenance during his lifetime. Sarah's claim that David wrongfully invested trust assets in a property that he owned jointly with his current wife is inconsistent with the facts. The Court of Chancery found, based upon review of the supplemental accounting, that David distributed funds from the trust to himself, as permitted by the terms of the trust, and used them to pay for construction of the home. The court's conclusions are supported by the record.

(14)　Finally, Sarah argues that the Court of Chancery erroneously allowed David's attorneys' fees, other than those incurred in preparing the supplemental accounting, to be paid by the trust. We review the Court of Chancery's decision regarding attorneys' fees for abuse of discretion.[20] Contrary to Sarah's assertion, David's conduct as trustee did not rise to the "extreme" level that warranted fee-shifting in *Paradee v. Paradee*.[21] In that case, a trustee "repeatedly and consciously

---

[18] 798 A.2d 503 (Del. 2002).
[19] *Id.* at 506.
[20] *In re Unfunded Ins. Trust Agreement of Capaldi*, 870 A.2d 493, 496 (Del. 2005).
[21] 2010 WL 3959604 (Del. Ch. Oct. 5, 2010).

sought to harm [a current beneficiary's] interests and serve her own" and took value from the trust to which she had no entitlement, at the beneficiary's expense.[22]  Here, David made distributions that were within his discretion and appropriately managed trust assets.  We find no abuse of discretion in the fee award.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

_/s/ Collins J. Seitz, Jr._
Chief Justice

---

[22] *Id.* at *16.