Jose C. PAMINTUAN and Elvira
L. Pamintuan, Plaintiffs,

v.

Estrella DOSADO, Executrix of the
Estate of Elpidio Dosado,
Defendant.

C.A. No. 2051–S.

Court of Chancery of Delaware,
New Castle County.

Submitted: July 18, 2003.
Decided: Aug. 1, 2003.

James B. Tyler, III, Georgetown, for Plaintiffs.

Jackson R. Dunlap, Jr., Brown, Shiels, Beauregard & Chasanov, Georgetown, for Defendant.

OPINION

STRINE, Vice Chancellor.

In this case, I decide whether the plaintiffs can bring a fiduciary duty action against the executrix of an estate, who failed to repay to the plaintiffs the amount of a debt owed to them by the decedent, notwithstanding the fact that the plaintiffs brought their action after the deadline prescribed by Delaware's nonclaim statute, 12 *Del. C.* § 2102, for bringing a creditor's claim against an estate. Because the decedent in his will clearly instructed his executrix to repay the specific debt owed to the plaintiffs, I find that § 2102 does not bar the plaintiffs' fiduciary duty action.

This ruling accords with the great weight of American common law addressing the topic, which holds that "where the direction in [a] will is specific as to the debt to be paid or the property from which payment is to be made, or where it is of such a nature as to create an express trust, there is no necessity for the creditor to present or prosecute his claim within the time designated by the nonclaim statute."[1] And I further conclude that the defendant breached her fiduciary duty to the plaintiffs by failing to repay the decedent's debt to the plaintiffs, as the will clearly instructed her to do.

1. 31 Am.Jur.2d *Executors and Administrators* § 570 (2002).

## I. *Facts*

The facts of this case are temporally protracted but straightforward. On May 31, 1978, Elpidio and Lydia Dosado, who at the time were husband and wife, executed a demand note in favor of Pamintuan and Lacdao–Pamintuan, M.D., P.A. (a Delaware professional corporation and hereinafter referred to as the "Professional Corporation") in the amount of $5,000 plus 6% interest per year. On September 11, 1981, Elpidio and Lydia Dosado divorced. About a year and a half later, Lydia died.

At some point after Lydia's death, Elpidio married Estrella Dosado.[2] On August 11, 1989, Elpidio executed a last will and testament (the "Will"). The Will contains several provisions that are important to the disposition of this matter. The first of these is the first paragraph of the Will, which reads:

> **FIRST:** I hereby direct my executrix hereinafter named, to pay all of my just debts, including the expenses of my last illness, funeral and burial, including a suitable plot and marker, if necessary as soon as practicable following my death, in such amount as my executrix may deem proper. I direct that all taxes due to the Federal Government and the State of Delaware, including estate and inheritance taxes, are to be paid by my estate. *I also direct my executrix to take special care to insure that my loan of $5,000, plus accrued interest, is repaid to my good friends, Dr. Jose and Elvira Pamintuan.*[3]

In the second and third paragraphs of his Will, Elpidio explains that he is making no provision for any of his six children and that the rest and remainder of his estate was to go to Estrella.[4] Finally, in the fifth paragraph of his Will, Elpidio names Estrella as the executrix of his estate.[5]

On September 6, 1989 — which was less than a month after he executed his Will — Elpidio died. And five days after his death, his Will was admitted to probate and filed with the Sussex County Register of Wills.

On June 17, 1999, the Professional Corporation, as well as the two individual plaintiffs in this action — Jose C. Pamintuan and Elvira L. Pamintuan — filed suit in the Superior Court. The plaintiffs in that action — the Professional Corporation and the Pamintuans — sought to recover on the debt formerly owed to them by Elpidio and Lydia Dosado. The Superior Court dismissed the plaintiffs' lawsuit because they did not file a creditor's claim against the estate within eight months of Elpidio's death as required by Delaware's nonclaim statute, 12 *Del. C.* § 2102.[6] But the Superior Court noted that — in addition to their claim on the promissory note — the plaintiffs also seemed to advance a fiduciary duty claim against Estrella, as executrix of her late husband's estate. The Superior Court concluded, however, that it did not have jurisdiction over the fiduciary duty claim because that claim fell exclusively within the equitable jurisdiction of the Court of Chancery. Thus, the Superior Court granted the plaintiffs sixty days leave to transfer their

---

**2.** I assume that Dosado was not Estrella's surname before her marriage to Elpidio.

**3.** Will at 1 (emphasis added).

**4.** *See id.*

**5.** *See id.* at 2.

**6.** *See Pamintuan & Lacdao–Pamintuan M.D., P.A. v. Dosado,* 2000 WL 305500, at *3 (Del.Super.Jan.28, 2000) ("Plaintiffs failed to file a claim within eight (8) months of Elpidio Dosado's death on September 6, 1989. Thus, their suit on the promissory note is barred." (citing 12 *Del. C.* § 2102)).

fiduciary duty claim to this court pursuant to 10 *Del. C.* § 1902.

## II. *The Estate's Major Asset*

The only major asset of Elpidio's estate was a partial interest in a house in Sussex County. The history of this house dates back to the time when Elpidio was married to Lydia. After their divorce, Elpidio and Lydia each retained a one-half interest in the house as tenants in common. When Lydia died intestate, her three children inherited her interest in the house. Thus, upon Elpidio's death, Estrella, as the residual beneficiary of her husband's estate, received only a one-half interest in the house.

Apparently, after Elpidio's death, Estrella continued to live in the house. But, as the estate's only major asset, the one-half interest in the house needed to be sold in order to satisfy Elpidio's debt to the Pamintuans. The Pamintuans, however, did not wish to kick the widow Dosado out of her house immediately. Thus, they decided to allow Estrella to live in the house until she was ready to sell "with the expectation she would pay [the debt] when she sold the house." [7]

About ten years after Elpidio's death — and around the same time the Pamintuans and the Professional Corporation filed the Superior Court action — Estrella sold her interest in the house. Estrella received $25,000 from the sale. Of that sum, $13,000 was paid into a court escrow account pending resolution of this dispute.

## III. *Procedural Posture*

This case is before me on cross-motions for summary judgment pursuant to Court of Chancery Rule 56. I may only grant a motion for summary judgment if there is no genuine issue of material fact in dispute in the case and the moving party is entitled to judgment as a matter of law.[8] The parties have provided the court with a joint statement of stipulated facts, and there are thus no disputed facts.

## IV. *The Parties' Arguments*

The plaintiffs — *i.e.,* the Pamintuans — advance two principal arguments. First, the Pamintuans contend that Estrella Dosado, as executrix, violated her fiduciary duties to them. The Pamintuans claim that Estrella should not have taken the residue of the estate without first paying a debt that was specifically mentioned in the Will. Second, the Pamintuans argue that Delaware's nonclaim statute, 12 *Del. C.* § 2102, does not bar their claim against Estrella because nonclaim statutes like § 2102 do not operate to bar creditor's claims to debts specifically mentioned in a will.

For her part, the defendant — Estrella Dosado — argues the opposite side of each of the Pamintuans' contentions. First, she argues that the first paragraph of the Will does not constitute a bequest or create a trust. Second, she contends that the plaintiffs' claim is barred by Delaware's nonclaim statute, 12 *Del. C.* § 1202, because the Pamintuans failed to present a claim for the debt within eight months of Elpidio's death.[9]

## V. *Legal Analysis*

 For the following reasons, the Pamintuans' motion for summary judg-

---

**7.** *Dosado,* 2000 WL 305500, at *2 (quoting Elvira Pamintuan Del.Super. Aff.).

**8.** *See Scureman v. Judge,* 626 A.2d 5, 10 (Del. Ch.1992), *aff'd sub nom. Wilmington Trust Co. v. Judge,* 628 A.2d 85 (Del.1993).

**9.** Dosado has not argued that the Pamintuans' suit is barred by laches. Any such defense has therefore been waived.

ment is granted, and Dosado's motion for summary judgment is denied.

 Generally, a testator's debts have priority over legacies and devises.[10] And an executrix has a fiduciary relationship with the creditors of the estate.[11] These principles are well-settled.

Therefore, the disagreement between the parties basically boils down to whether Delaware's nonclaim statute, 12 *Del. C.* § 2102, bars the Pamintuans' claims. Title 12, section 2102(a) of the Delaware Code provides:

> All claims against a decedent's estate which arose before the death of the decedent, including claims of the State or any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, except debts of which notice is presumed pursuant to § 2103 of this title, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented as provided in § 2104 of this title within 8 months of the decedent's death whether or not the notice referred to in § 2101 of this title has been given.

But in *In re Estate of Frandson*, the Supreme Court of North Dakota, in the context of construing its own nonclaim statute, concluded:

> [a] general direction in a will for the payment of debts which does not create an express trust does not obviate the necessity on the part of a creditor of presenting the claim within the period fixed by a non-claim statute. *However, where the direction in a will is specific as to the debt to be paid or the property from which payment is to be made, or is of such a nature as to create an express trust, there is no necessity for the creditor to present the claim within the statutory time period.*[12]

The rule articulated in *Frandson* appears to be the prevailing one in the United States:

> In most jurisdictions, a general direction in a will for the payment of debts which does not create an express trust does not obviate the necessity on the part of a creditor of presenting, probating, proving, or prosecuting his claim with the period fixed by the nonclaims statute. However, where the direction in the will is specific as to the debt to be paid or the property from which payment is to be made, or where it is of such a nature as to create an express trust, there is no necessity for the creditor to present or prosecute his claim within the time designated by the nonclaim statute.[13]

---

**10.** *See* William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 52.3 (1962).

**11.** *See In re Ortiz' Estate,* 27 A.2d 368, 373 (Del.Ch.1942).

**12.** 383 N.W.2d 807, 810 (N.D.1986) (emphasis added and citations omitted).

**13.** 31 Am.Jur.2d *Executors and Administrators* § 570 (2002); *see also Page on Wills* § 52.2 (stating that a creditor may overcome a nonclaim statute if the decedent's will refers to a specific debt owed to the creditor); *Lewis v. Smith's Estate,* 130 Ind.App. 390, 162 N.E.2d 457, 460–61 (1959) (holding that a claim was barred by the nonclaim statute where the will was not specific as to the payment of that debt and did not designate the property from which payment for that debt should be made); *In re Bachand's Estate,* 307 N.W.2d 140, 143 (S.D.1981) ("In most jurisdictions, a general direction in a will for the payment of debts which does not create a express trust does not obviate the necessity on the part of a creditor of presenting, probating, proving, or prosecuting his claim within the period fixed by the nonclaims statute. But, where the direction in the will is specific as to the debt to be paid or the property from which payment is to be made, or where it is of such a nature as to

Although no Delaware case addresses this topic, I find the prevailing view sensible and the soundest rule for Delaware courts to adopt. I now articulate the reasons why I believe that to be so.

■ In this case, the Will was specific as to the debt in question,[14] and, therefore, the nonclaim statute should not bar the Pamintuans' claim. The purpose of nonclaim statutes is to facilitate the prompt distribution of estate assets,[15] "so that decedent's estates can be settled within a reasonable time."[16] In other words, by enacting 12 *Del. C.* § 2102, the General Assembly sought to bring certainty for recipients and executors in the distribution of estate assets by requiring creditors of estates to bring their claims within eight months of the decedent's death or forfeit their rights. That legislative policy would not be disturbed by a finding for the Pamintuans here.

Why? Because the general common law rule recognizes that if the will specifically identifies a particular debt to be paid, then the purpose of the nonclaim statute as to that debt has already been fulfilled by the testator himself in the will drafting process. The debt is then like any other specific bequest or instruction for payment and the executor has all the information needed to take that debt into account in finalizing the estate's administration. And, in that situation, the creditor fortunate enough to have her debt specifically enumerated as a mandatory subject of payment from the decedent's estate should not be required to file a redundant notice to the executrix, at the risk of losing the beneficence specifically bestowed upon her by the testator.

Estrella took her residual interest in Elpidio's estate while ignoring his specific direction to pay his debt to the Pamintuans. The Will could not be clearer as to the nature of the debt owed, the amount owed, and to whom that debt is owed. There is no other logical reading of the Will than that Elpidio wanted Estrella, his executrix, to pay to the Pamintuans the $5,000 debt principal plus any accrued interest. In effect, this instruction functioned as a bequest to the Pamintuans, a bequest that Estrella was duty-bound to honor.[17] As executrix, Estrella Dosado obviously knew of Elpidio's clear and unambiguous instruction. But she chose to ignore this instruction and the rights of the Pamintuans — to whom she owed a fiduciary duty.

## VI. *Conclusion*

For the foregoing reasons, the Pamintuans' motion for summary judgment is granted, and Dosado's motion for summary judgment is denied. The parties shall submit to the court a conforming final order within five days of the date of this opinion releasing the escrowed funds necessary to repay the debt to the Pamintuans. The Pamintuans shall also receive their costs.

create an express trust, it has been held that there is no necessity for the creditor to present or prosecute his claim within the time designated by the nonclaim statute.").

**14.** *See* Will at 1.

**15.** *See Witco Corp. v. Beekhuis*, 38 F.3d 682, 690 (3d Cir.1994); *Estate of Holton*, 1976 WL 5206, at *2 (Del.Ch. Aug.17, 1976).

**16.** *Brockson v. Richardson Bros.*, 24 A.2d 537, 539 (Del.Super.1942), *overruled on other grounds by Gwaltney v. Scott*, 195 A.2d 247 (Del.1963).

**17.** Alternatively, the instruction created a trust on their behalf. In either formulation, the end result is the same, and the executrix must honor the instruction.