# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|                          |   |                          |
|--------------------------|---|--------------------------|
| Ray Wayne Lynch,         | ) | C.A. No.  12083-MG       |
|     Plaintiff, | ) |                |
| v.                       | ) |                          |
|                          | ) |                          |
| Frank Barba,             | ) |                          |
|     Defendant. | ) |                 |

## MASTER'S REPORT

Date Submitted:  February 5, 2018
Draft Report:  November 3 2017
Final Report:  April 3, 2018

Ray Wayne Lynch, Pro Se

J. Jackson Shrum, Esquire, of Jack Shrum, P.A., Wilmington, Delaware: Attorney (Withdrawn) for Plaintiff

David J. Ferry, Jr., Esquire; Timothy Ferry, Esquire; Thomas R. Riggs, Esquire, of FERRY JOSEPH, P.A., Wilmington, Delaware; Attorneys for Defendant

GRIFFIN, Patricia

The plaintiff, Ray Wayne Lynch ("Lynch"), filed this action claiming that the defendant, Francis Barba ("Barba"), breached his fiduciary duty as the executor of the estate of Ethel M. Lynch ("Estate") and as the successor trustee of the Ethel M. Lynch's Revocable Trust ("Revocable Trust") and of the Special Needs Trust ("SNT"). Lynch asks this Court to remove Barba as the trustee of both trusts and terminate the SNT, among other claims for relief. Barba filed a motion for summary judgment on Lynch's claims, requesting a determination that he has met his fiduciary obligations and that the SNT be terminated and the remaining assets be paid to Lynch. Because there are no material issues of fact in dispute, I recommend that the Court grant Barba's motion. This is a final report.

## BACKGROUND

On August 16, 2007, Ethel M. Lynch ("Ethel") executed a will ("Will") and established two trusts, a Revocable Trust and a Special Needs Trust.[1] The Will provided that Ethel's tangible personal property was bequeathed to her children who survived her in equal shares, and the residue of her estate, including real and personal property, would go into the Revocable Trust.[2] The Revocable Trust provided that, after Ethel's death, 50% of the principal in the Revocable Trust would be transferred to the SNT established to benefit her son, Lynch, with the balance remaining in the

---

[1] I may use first names in pursuit of clarity, and intend no familiarity or disrespect.
[2] Def.'s Opening Br. in Supp. of Mot. for Summ. J., App. [hereinafter "Def. App."] A-6 (Will of Ethel M. Lynch), Art. III & Art. IV, at 2.

Revocable Trust to benefit her daughter, Rhonda Barba ("Rhonda").[3] Upon Rhonda's death, the Revocable Trust provided that the trust principal would be distributed as Rhonda detailed in her will or other document, or to her surviving issue *per stirpes* if Rhonda had not otherwise provided for this distribution.[4]

Ethel died on August 10, 2010 and, since Rhonda had predeceased Ethel, Barba was named successor executor of the Estate and successor trustee of the trusts. Problems in the relationship between Barba and Lynch, beneficiary of the Estate and the SNT, are longstanding. Shortly before Ethel's death, Lynch sent a letter to Ethel's estate planning attorney indicating that Lynch and Barba did not have the "best working relationship" and that Lynch was in an "uncomfortable" situation because he felt Barba was acting "in the capacity of a son."[5] From August 2010 through the present, Lynch has sent numerous letters included in the appendix to the complaint to Barba and to Barba's attorneys expressing concerns about the administration of the Estate and the SNT.

This litigation, similarly, has an extensive history. Lynch filed his 78 count complaint on March 7, 2016, and Barba submitted his answer on April 25, 2016. The complaint alleges that Barba has not acted in good faith as executor of the Estate or as trustee of the SNT and of the Revocable Trust. Lynch claims Barba has not acted in

---

[3] Def. App. A-7 (Revocable Trust of Ethel M. Lynch), Art. VI, at 4-5.
[4] *Id.* at 5-6.
[5] Compl. App., Ltr. from Pl. Ray Lynch to Att'y Kevin O'Brien (July 26, 2010).

Lynch's best interests; Barba sold real property assets for less than they were worth and not in arms-length transactions; Barba refused to remove "Special Needs Trust" from the title on the checks from the trust provided to Lynch; Barba denied Lynch the ability to carry on the family business after Ethel's death by turning off the business phone, and did not give Lynch the business assets (Ethel's laptop and cell phone); Barba moved the tangible personal assets in the Estate from the family home and stored them without Lynch's approval, causing damage to those assets; Barba created a "non-communicating" situation with Lynch, making it "[d]ifficult if not impossible to discuss mutual needs and circumstances concerning the trust", subjecting Lynch to "five years of abuse, torment and disrespect";[6] he has not made quarterly payments to Lynch from the SNT, and has denied payments for Lynch's special needs; Barba has "no incentive to give [Lynch] anything from [his] trust" since Barba's sons are contingent beneficiaries of SNT funds remaining at Lynch's death;[7] Barba has "misappropriated or totally omitted estate/trust assets" including a Pilgrim Life Insurance policy, has engaged "high dollar attorneys," and the cost of the accounting services used by Barba is "highly suspect";[8] he has not provided Lynch with a complete and understandable accounting of the trust or other information he requested, and did not provide tax returns to Lynch until beginning in 2012; and

---

[6] Compl. ¶1 at 1.
[7] Compl. ¶55 at 9.
[8] Pl.'s Answer to Def.'s Mot. for Summ. J., at 12.

Barba hired an attorney with trust funds to be "used against" Lynch.[9] Lynch demands that Barba be removed as trustee and the SNT be terminated, and that Barba provide a full and complete accounting of the trusts and pay all fees and damages caused by his breach, including Lynch's legal fees and expenses.

The parties engaged in heavy motion practice in this case. Prior to May 2017, Lynch filed two motions to compel, a motion to seek relief related to a discovery matter, a motion for a temporary restraining order to prevent sale of trust property, and two motions to extend the discovery deadlines. All of these motions were denied, except the discovery deadlines were extended. Barba filed a motion to compel Lynch to appear for the second half of his deposition and for attorney's fees, as well as a motion to amend his answer to revise the relief requested. Barba's motions were granted, and the Court ordered Lynch to pay $1,200 in attorney's fees related to the motion to compel.

Barba filed a motion for summary judgment in May 2017 asking the Court to dismiss Lynch's complaint because there are no disputed material facts, determine that Barba has met his fiduciary obligations as trustee and should not be removed as trustee, find Lynch's claims regarding personal property from the estate are time-barred by 12 *Del. C.* § 2102 and laches, and authorize Barba to terminate the SNT and distribute remaining assets, after payment of final counsel fees and costs, trustee

---

[9] Compl. ¶78 at 9.

commissions and other expenses to Lynch in satisfaction of Lynch's claims against Barba and the SNT. The parties briefed the motion and responded to my request for additional information. My draft report on the motion was filed on November 3, 2017, and Lynch took exceptions to the draft version of this report. I have either modified the body of this report to address the exceptions taken, or consider them adequately addressed in this final report.

Subsequent to the filing of the draft report, Lynch filed motions on a number of matters, which were addressed in a telephonic hearing on December 4, 2017, and in a final report issued on January 9, 2018 denying Lynch's request for emergency funds from the Trust.[10]

---

[10] One additional matter related to Lynch's concerns about the public availability of information contained in court documents that he viewed as personally sensitive. The Court treated his requests about information in the November 3, 2017 draft report, the January 9, 2018 final report and related documents he filed with the court, as requests for confidential treatment. The Court ordered that Lynch submit proposed redacted versions of court documents he has filed that he believes qualify for confidential treatment to the Court and his specific concerns regarding the January 9th final report, and address his concerns regarding the November 3rd draft report in the briefing of his exceptions. Lynch has not provided proposed redacted versions or specific concerns to the Court separately or in his briefs in support of his exceptions. In a February 25, 2018 letter to the Court, Lynch stated that he felt "it best to leave this matter up to the court; realizing the nature and potential personal damage to [him]." Docket Item 160 (hereinafter "D.I."), at 2 (Mar. 1, 2018). Under Court of Chancery Rule 5.1, all proceedings in civil actions in the Court of Chancery are a matter of public record unless good cause for confidential treatment is shown. The party seeking confidential treatment has the burden of showing that the harm caused by public disclosure of sensitive, non-public information would outweigh the public interest in access to court proceedings. *Cf. ADT Holdings, Inc. v. Harris*, 2017 WL 4317245, at *1 (Del. Ch. Sept. 28, 2017); *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *3 (Del. Ch. Oct. 14, 2013); *Sequoia Presidential Yacht Grp. LLC. v. FE Partners LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013). Examples of information that may qualify for confidential treatment include sensitive personal information, such as medical records, and personally identifying information such as social security numbers and financial account numbers. The fact that information may be embarrassing does not alone warrant confidential treatment. *Al Jazeera Am., LLC*, 2013 WL 5614284, at *3;

## STANDARD OF REVIEW

The standard for reviewing a motion for summary judgment under Court of Chancery Rule 56 is well-known. Under Rule 56(c), summary judgment is granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The summary judgment standard places the initial burden on the moving party to demonstrate that are no genuine issues of material facts. Once the moving party has satisfied that burden, it falls on the non-moving party to show that there are factual disputes. It may not rest upon the mere allegations or denials contained in its pleading, but must present specific facts showing that there is a genuine issue for trial.[11] If a material fact exists, or the Court desires to inquire "more thoroughly into the facts to clarify" how to apply the law to the circumstances in the case, then

---

*Sequoia Presidential Yacht Grp. LLC.*, 2013 WL 3724946, at *2. Here, Lynch has not met his burden of showing good cause for confidential treatment of documents and has not submitted proposed redacted versions of documents in compliance with Rule 5.1 or provided specific concerns about documents. I do not find that the documents referenced by Lynch contain the type of sensitive, personal information, such as medical records or financial account information, that Rule 5.1 protects from public disclosure. However, recognizing Lynch's sensitivities and allowing greater leniency since he is *pro se*, I have modified the draft report to eliminate references to personal information, where possible, so long as the information is not central to the consideration of Lynch's claims.

[11] *E.g.*, *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *Wells Fargo Bank, N.A. v. Williford*, 2011 WL 5822630, at *2 (Del. Super. Ct. Nov. 17, 2011).

summary judgment will not be granted.[12]  Evidence must be viewed "in the light most favorable to the non-moving party."[13]

## ANALYSIS

### 1. Barba has met his fiduciary duties as trustee of the Special Needs Trust

In summary, I recommend that the Court grant Barba's motion for summary judgment, finding that Barba has not violated his fiduciary duties as trustee.

### A. The trustee's powers and duties under the Will and the Special Needs Trust

The Will and the SNT gave the executor and trustee broad fiduciary powers, in addition to those granted by law, such as the right to invest in and purchase all forms of property, and to sell or otherwise dispose of property.  The Will and the SNT each contained a specific provision recognizing that the Estate's property includes real estate and/or closely-held businesses, and stated that it was Ethel's intention that the fiduciary

> may continue to hold such interests and to act with respect to such interest as [Ethel] would have acted.  [Ethel does] not direct [her] fiduciary to refrain from disposing of such interests, but [she] direct[s] that [the] fiduciary only make such decision after thorough consideration of all the ramifications of disposal of such interests.[14]

---

[12] *E.g., Williams v. Geier*, 671 A.2d 1368, 1388–89 (Del. 1996), citing *Ebersole v. Lowengrub,* 180 A.2d 467 (Del. 1962); *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996).

[13] 671 A.2d at 1388–89, citing *Merrill v. Crothall–American, Inc.,* 606 A.2d 96, 99 (Del. 1992).

[14] Def. App. A-6, Art. IX, at 6,7; Def. App. A-8, Art. VIII, at 7,9.

The SNT also specifically provided that the fiduciary has the power to employ and compensate accountants, attorneys-at-law and other assistants and advisors they deem "necessary for the proper administration of the trust."[15]

With regard to distributions, the Will and the SNT authorized the executor and trustee to make distributions in any manner that they think is in the best interest of a beneficiary, and that all payments of "income which are currently distributable shall be made in convenient installments, not less frequently than quarterly."[16] The SNT included additional provisions stating that, during Lynch's lifetime, the "trustee may pay to, or apply for the benefit of [Lynch] such amounts of principal or income, up to the whole thereof, as the trustee, in the trustee's sole and uncontrolled discretion, may from time to time deem necessary or advisable for the satisfaction of [Lynch's] special needs. . . ."[17] And, the SNT defined "special needs" as "the requisites for maintaining the beneficiary in good health, safety and welfare when, in the discretion of the trustee, such requisites are not being provided by any county, state, federal or other governmental agency which has a legal responsibility to serve persons with disabilities which are the same or similar to the impairments of [Lynch]."[18] The SNT gave any beneficiary the right to request and receive a "complete written accounting of such matters pertaining to the administration of the trust as are pertinent to that

---

[15] Def. App. A-8, Art. VIII, at 8.
[16] Def. App. A-6, Art. VI, at 3-4; Def. App. A-8, Art. X, at 10-11.
[17] Def. App. A-8, Art. V, at 4.
[18] *Id.*

beneficiary" from the trustee, with the caveat that the trustee has the discretion to provide copies of the trust's income tax returns to satisfy such requests.[19]

B. **A trustee's fiduciary obligations generally under Delaware law**

Trustees are held to a "prudent investor standard in the management and investment of a trust's assets or property."[20] In managing trust property, "trustees must act with skill, care, diligence and prudence in light of the circumstances. A non-professional trustee's duty to the beneficiaries in administering a trust is to exercise the skill and care that a man of ordinary prudence would exercise in dealing with his own property in light of the situation existing at the time."[21] Except that, with regard to trust assets, they are not permitted to endanger the trust estate by taking risks with the trust property which they might take when dealing with their own property.[22] In addition to the "prudent person" standard, the fiduciary duties a trustee traditionally owes at common law include the duty of loyalty and the rule against self-dealing.[23] Under Delaware law, a trustee's powers are subject to fiduciary duties unless modified by the terms of the trust.[24]

C. **Barba has not violated his fiduciary duties as trustee of the Ethel M. Lynch Special Needs Trust**

---

[19] Def. App. A-8, Art. III, at 3.
[20] *Law v. Law*, 753 A.2d 443, 447 (Del. 2000), citing *Wilmington Tr. Co. v. Coulter* [hereinafter "*Coulter*"], 200 A.2d 441, 448 (Del. Ch. 1964); *see also* 12 *Del. C.* § 3302(a).
[21] *Id.*
[22] *duPont v. Delaware Trust Co.*, 320 A.2d 694, 697 (Del. 1974); s*ee also Coulter,* 200 A.2d at 448.
[23] *IMO Daniel Kloiber Dynasty Trust,* 98 A.3d 924, 930 (Del. Ch. 2014).
[24] 12 Del. C. § 3324(b).

Lynch alleges a number of instances in which he believes that Barba has violated his fiduciary duties as executor and trustee of SNT. The first set of these allegations focuses on Barba's handling of the trust assets, including his sale of Estate/trust property and his expenditure of trust funds. The remaining allegations focus on Barba's communications with the beneficiary, Lynch, and whether Barba acted deferentially towards his sons, the contingent beneficiaries of the SNT. I will address the allegations in turn.

First, Lynch alleges that Barba sold real property assets for less than they were worth and not in arms-length transactions. When a trustee sells trust assets, his main goal is to obtain the maximum price considering the assets' value. He is responsible for acting "as other reasonable businessman would have acted under the same circumstances."[25] Barba had authority under the Will and the SNT to sell real property so long as he thoroughly considered the effect of disposing of the property.[26] From the evidence presented, it appears that the real property in the Estate included seven pieces of property, including the property specifically identified by Lynch in his complaint – 25 acres of land in Milroy, Pennsylvania.[27] Lynch identified two additional trust properties – 2000 Eden Road, Wilmington, Delaware, and 101 East

---

[25] *Pennsylvania Co. v. Wilmington Tr. Co.*, 186 A.2d 751, 756 (Del. Ch. 1962), *aff'd sub nom. Wilmington Tr. Co. v. Coulter*, 200 A.2d 441 (Del. 1964).

[26] Def. App. A-6, Art. IX, at 6,7; Def. App. A-8, Art. VIII, at 7,9.

[27] Seven pieces of property were discussed by Barba's attorney in a letter to Lynch's attorney, which indicated that copies of deeds, ownership and transfer documents, appraisals, HUD-1 and

32nd Street, Wilmington, Delaware – in his answer to the motion for summary judgment to support his claim that Barba sold trust properties at below market rates in violation of his fiduciary duty. There is no indication that Barba's decisions to sell the property were not well-thought out or were not handled in a reasonably business-like manner. Specifically, the Milroy, Pennsylvania hunting property was sold for its appraised value, and there was no documentation provided showing that the land was undervalued as appraised.[28] Lynch has not provided factual support for his allegation that the properties were sold for less than they were worth.[29]

---

settlement sheets were included with the letter and had previously been provided to Lynch. Def. App. A-15, Ltr. from Def.'s Att'y Ferry to Pl.'s Att'y Shrum (Feb. 19, 2017).

[28] Def. App. A-11.

[29] In his exceptions, Lynch argues that Barba displayed favoritism and poor judgment in selling all trust properties below their appraised values, or in selling properties that had an established rental stream, and seeks to support his claim by supplementing the factual record to include appraisals and settlement sheets (where applicable) on all properties, even for those properties that were not specifically argued previously. Barba responds that Lynch had previously referenced only the sales of three properties (2000 Eden Road, Wilmington, Delaware, 101 East 32nd Street, Wilmington, Delaware, and 25 acres of hunting land in Mifflin County, Pennsylvania), in his complaint and answer to the motion for summary judgment. By failing to bring these arguments up previously, or to provide factual support in the briefing on the motion for summary judgment, Barba asserts that Lynch waived those arguments.

A motion for summary judgment must be decided on the record presented, and "not on what evidence is 'potentially possible.'" *Albanese v. Allstate Ins. Co.*, 1998 WL 437370, at *1 (Del. Super. Ct. July 7, 1998). Once the movant satisfies its burden, the party opposing summary judgment must produce specific facts showing the existence of a genuine issue of material fact. *Cf. Glob. Energy Fin. LLC v. Peabody Energy Corp.,* 2010 WL 4056164, at *17 (Del. Super. Ct. Oct. 14, 2010); *Lundeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at *5 (Del. Super. Ct. Aug. 31, 2006). Further, the failure to raise a legal issue in the text of an opening brief generally constitutes a waiver of the claim in connection with the matter under submission to the court. *E.g., In re Asbestos Litig.,* 2007 WL 2410879, at *4 (Del. Super. Ct. Aug. 27, 2007) (citations omitted). In this case, Lynch only presented his claims regarding the sale of all of the properties, including factual support, when he filed the brief on his exceptions to the draft report, after the record was closed. Allowing Lynch, a *pro se* litigant, greater leniency in the interest of justice, I will treat his submission of new factual evidence as a motion to supplement the record. A motion to supplement a record is at the discretion of the court; generally, admission of "late-submitted evidence is not

Lynch claims that Barba denied Lynch the ability to carry on the family business after Ethel Lynch's death by turning off the business phone but Lynch failed to present any evidence that Barba's actions with regard to the family business had a detrimental effect on the business as it existed at that time.[30] Barba explained that Ethel's laptop contains business information and he used the laptop for Estate and trust purposes.[31] Lynch also claims that Barba has not accounted for a "Pilgrim Life Insurance policy" that Ethel Lynch had, but Barba indicated that proof of such life insurance was never provided, and during his deposition Lynch stated that he did not personally know whether his parents had a life insurance policy and had not researched whether one existed.[32]

Second, Lynch claims that Barba has misspent and/or misappropriated estate or trust funds, but failed to show any specific actions of the trustee that would

favored." *Pope Investments LLC v. Benda Pharm., Inc.*, 2010 WL 3075296, at *1 (Del. Ch. July 26, 2010). The Court considers certain factors in determining whether to grant a motion to supplement the record, such as whether the evidence is newly discovered, whether the party would have discovered the evidence previously if it had exercised reasonable diligence, whether the evidence is so material that it is likely to change the outcome, whether the non-moving party will suffer undue prejudice, and ultimately, considerations of fairness and justice. *Cf. In re Mobilactive Media, LLC*, 2013 WL 1900997, at *1 (Del. Ch. May 8, 2013); *Pope Investments LLC* 2010 WL 3075296, at *1-*2. Here, I find it would not serve the interests of fairness and justice to grant Lynch's request to supplement the record, given that this evidence is not newly discovered, he had received copies of the evidence prior to the filing of the motion for summary judgment, and the evidence is not sufficiently material to affect the case outcome, or to show the properties were sold for less than they were worth at the time of sale.

[30] Although the record is limited, it appears that the family businesses operated under Lynch General Contracting, Lynbar Enterprises and R&R Associates. Def. App. A-15, Ltr. from Def.'s Att'y Ferry to Pl.'s Att'y Shrum (Feb. 19, 2017). The complaint stated, and Barba's answer admitted, that Barba and attorneys for the Estate "said there was nothing of value in the family business." Compl. ¶20 at 3; Def. App. A-10, Def. Answer to Compl. ¶20.

[31] Def. App. A-13, Ltr. from Def.'s Att'y Ferry to Pl.'s Att'y Shrum (March 29, 2017).

support his claim. His claims appear to focus on his concern that Barba has engaged "high dollar" attorneys and that the cost of the accounting services used by Barba is "highly suspect." Barba continued to use the same accounting firm for preparing estate and trust accountings and tax returns that Ethel Lynch had used prior to her death. The SNT clearly authorized the trustee to hire accountants and attorneys, as needed, to administer the trust.[33] Lynch has presented no evidence that the work of the accountant employed by Barba exceeded that authority. The issue concerning attorneys' fees will be addressed later in this report.

Third, Lynch alleges that Barba has failed to properly distribute SNT funds to him to meet his special needs, including for dental work and other similar needs, on a quarterly basis, as the SNT requires. The record shows that Barba distributed some funds: the letters from Lynch to Barba or to Barba's attorneys referring to specific checks and payments Lynch received from the trust, payments made in response to invoices submitted in March 2017, and indicating that Lynch's monthly allowance had been cut off because of inadequate trust income.[34] Lynch's complaint that he did not want to continue to receive checks that had "Special Needs Trust" in the account title (because the notation was a violation of his privacy) also indicated

---

[32] Def. App. A-2, Pl.'s Dep. Tr. at 83-85.
[33] Def. App. A-8, Art. VIII, at 8.
[34] *See* Compl. App., Ltr. From Ray Lynch to Frank Barba, (Apr. 11, 2014); Def. App. A-13, Ltr. from Def.'s Att'y Ferry to Pl.'s Att'y Shrum (March 29, 2017).

he was at least receiving some checks.[35] The issue is not whether payments from the trust were made at the time and in the amount requested by Lynch, but whether Barba distributed trust funds to Lynch consistent with the authority provided by the SNT and with Delaware law generally.

The SNT authorizes the trustee to make distributions in "any manner which [he deems] to be in the best interest of a beneficiary" and that all payments of "income which are currently distributable shall be made in convenient installments, not less frequently than quarterly."[36] Another provision in the SNT specifically authorizes the trustee, in his "sole and uncontrolled discretion" to pay out both the principal and income in the trust as he deems "necessary or advisable" to meet Lynch's special needs.[37] The record shows that the current value of the trust – and, as a consequence, its income – is limited. Barba indicated the value of the trust accounts at the end of September 2017 was $73,487.[38] Therefore, the ability to make quarterly payments from income would be affected. Although Lynch has complained repeatedly about Barba's failure to pay for his funding requests within the time frames that Lynch would like, the SNT gave Barba broad discretion to make payments from principal when he deemed them "necessary or advisable." As a

---

[35] Compl. App., Ltrs. from Pl. Lynch to Frank Barba (Oct. 19, and Dec. 1, 2015, and Apr. 11, 2014).
[36] Def. App. A-8, Art. X, at 10-11.
[37] *Id.,* Art. V, at 4.

fiduciary, Barba is responsible for acting with skill, care, diligence and prudence in light of the circumstances. Lynch has failed to present evidence that Barba violated his fiduciary duty with regard to trust distributions to the SNT beneficiary.

Fourth, Lynch claims that Barba, as trustee, failed to properly complete the trust accountings and tax returns in violation of his fiduciary duty. A trustee has an independent duty to maintain records for the trust.[39] Barba presents an uncontroverted expert opinion from the certified accountant at Bumpers & Company, who prepared the accounting and tax returns for the SNT. His letter stated that:

> All required accountings and tax returns for the Revocable Trust and the SNT have been filed, and all such accountings and returns were accurate. From my review of all of the records and information provided to me, Frank Barba met his fiduciary obligations to account for all assets in the Revocable Trust and the SNT. All of my opinions in this matter have been given to a reasonable degree of professional certainty.[40]

Lynch has failed to present evidence that Barba violated his fiduciary duty concerning the maintenance of trust records.

In conclusion, Lynch has failed to provide any evidence to support a finding that Barba did not meet his fiduciary obligations regarding his handling of the financial aspects of the SNT.

---

[38] D.I. 96-97, Ltr. from Def.'s Att'y Ferry to M. Griffin (Oct. 13, 2017). This value does not reflect the value of the SNT's 50% interest in a Florida property that is currently for sale, or outstanding obligations of the trust. D.I. 100, Ltr. from Def.'s Att'y Ferry to Ray Lynch (Sept. 8, 2017).

[39] *Cf. Mennen v. Wilmington Tr. Co.*, 2015 WL 1914599, at *25 (Del. Ch. Apr. 24, 2015), *aff'd sub nom. Mennen v. Fiduciary Tr. Int'l of Delaware*, 166 A.3d 102 (Del. 2017).

[40] Def. App. A-5, Ltr. from Chadwick Milton to Def.'s Att'y Ferry (April 3, 2017).

Further, Barba, as trustee, has a duty to communicate with Lynch, the beneficiary, and to provide the proper information, including accountings, to Lynch. A trustee has a duty to furnish information about essential facts, including basic trust terms, to the beneficiaries, upon reasonable request or even without a request.[41] It is undisputed that the relationship between Lynch and Barba was difficult from the beginning. Lynch stated that he and Barba did "not have the best working relationship" even prior to Ethel Lynch's death. Despite that, Lynch has failed to show that Barba did not provide him with basic information about the terms of the trust or that Barba did not respond to his requests for accountings. Lynch was aware of the terms of the SNT and he communicated regularly with Barba and Barba's attorney about various aspects of the SNT.[42] The SNT specifically stated that the trustee had the discretion to provide income tax returns to satisfy requests for accountings.[43] Barba provided Lynch with SNT tax returns covering 2011 – 2016, as well as SNT monthly account statements for most of that time period, and other

---

[41] *E.g., McNeil v. McNeil*, 798 A.2d 503, 510 (Del. 2002); *President & Fellows of Harvard Coll. v. Glancy*, 2003 WL 21026784, at *20, n. 33 (Del. Ch. Mar. 21, 2003) (citing *Restatement (Second) of Trusts § 173* (1959), "[t]rustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property").

[42] *See, e.g,* Compl. App., Ltrs. from Ray Lynch to Barba (Sept. 17, Oct. 19, and Dec. 1, 2015; Apr. 11, 2014; Apr. 2, and Oct. 10, 2013; Jan. 12, Jan. 29, and Nov. 4, 2012; and Sept. 16, Sept. 27, and Oct. 1, 2011).

[43] Def. App. A-8, Art. III, at 3.

financial documents.[44]  Lynch's allegations that Barba failed to provide him with the required financial information are unsupported.

Fifth, Lynch claims that Barba has a conflict of interest because his sons are contingent beneficiaries of the SNT and that Barba acted in a way that unfairly benefitted his sons.  The SNT provides that "[u]pon the death of [Lynch], trustee shall pay funeral expenses incurred on behalf of [Lynch], and shall distribute the balance of the trust to my then living issue, on a per stirpes basis."[45]  Currently, Ethel's living issue are Lynch and the sons of Barba and Rhonda, Matthew and Eric Barba.  A trustee should not show preference between current and remainder beneficiaries and should act in a way that a fair result is reached in the interest of both current and future beneficiaries.[46]  Lynch has presented no evidence that Barba has administered the trust in a way that unfairly favored his sons, the contingent beneficiaries of the SNT.  Indeed, Barba has requested that the SNT be terminated and the funds distributed to Lynch free of the trust, which would eliminate his sons' interests in the trust.

2. **Lynch's claims regarding Barba's administration of the estate are barred by laches**

---

[44] *See* Def. App. A-14, Ltr. from Def.'s Att'y Ferry to Ray Lynch (March 24, 2016); Def. App. A-15, Ltr. from Def.'s Att'y Ferry to Pl.'s Att'y Shrum (Feb. 19, 2017).
[45] Def. App. A-8, Art. V, at 5.
[46] *See McNeil v. Bennett*, 792 A.2d 190, 214 (Del. Ch. 2001), *aff'd in part, rev'd in part sub nom. McNeil v. McNeil*, 798 A.2d 503 (Del. 2002) (trustees must act impartially towards all beneficiaries, including unborn beneficiaries).

Lynch claims that Barba, as executor, improperly administered the Estate. His allegations include that Barba moved the Estate's tangible personal assets from the family home and stored them without Lynch's approval causing damage to those assets, and that Estate property is missing. Ethel died on August 10, 2010; her estate was opened in the New Castle County Register of Wills on August 13, 2010 and closed on December 21, 2011. Barba asserts that Lynch's claim against the estate are time-barred because Lynch failed to bring the claim within six months after it arose under 12 Del. C. § 2102, and under the doctrine of laches, because Lynch was aware of his claim and unreasonably delayed bringing it forward.

Lynch's claims concerning Barba's alleged negligence arose during the administration of the Estate. In letters from Lynch to the Estate's attorney on September 16, 2011 and September 29, 2011, Lynch expressed his concerns in writing about alleged damage to the Estate's personal property when the property was moved from the family home.[47] The record also indicates that Lynch alleged that other Estate property was missing around that same time. I take judicial notice that the inventory for Ethel's Estate was filed on March 10, 2011 and referenced Ethel's tangible personal property on the schedule of the Estate's miscellaneous property.[48]

---

[47] Further, in a March 29, 2012 letter, Lynch stated "I have been complaining for several months about the unprofessional storage of my tangible assets, not to mention damage to same." Pl.'s Answer to Def.'s Mot. for Summ. J., Ex. (Ltr. from Ray Lynch to Att'y Mark Gentile (Mar. 29, 2012).

[48] *See State v. Falkowski*, 2001 WL 1448487, at *1, n. 1 (Del. Super. Oct. 2, 2001) (taking judicial notice of the records of the Register of Wills because it is a Clerk of the Court of Chancery).

Register of Wills records show that the Estate account was filed on September 20, 2011 and the notice of the filing of the final account for the Estate was sent to Lynch at that time. No exceptions were filed to the final account, and the Estate closed on December 21, 2011. Lynch filed the action setting forth his claim in March 2016 – more than four years and one-half years after the claim arose.

The purpose of 12 *Del. C.* § 2102, a non-claim statute, is to facilitate the prompt distribution of estate assets by requiring that creditors of estates bring their claims against the estate within a limited period of time, "so that decedent's estates can be settled within a reasonable time."[49] Section 2012(b) requires that claims arising after the decedent's death be filed with the estate within six months after they arise. However, § 2102(d) excludes claims for legacies or shares of an estate of a decedent from the time restrictions in earlier subsections of § 2102, including § 2102(b).[50] It is unnecessary for me to determine whether Lynch's claim is barred by § 2102 because Lynch's claims do not survive under the doctrine of laches.

Laches is an equitable doctrine "rooted in the maxim that equity aids the vigilant, not those who slumber on their rights."[51] A finding of laches generally requires proof of three factors: the claimant's knowledge of the claim, unreasonable

---

[49] *E.g., Sherman v. State,* 133 A.3d 971, 980 (Del. 2016); *Pamintuan v. Dosado*, 844 A.2d 1010, 1014 (Del. Ch. 2003) (citations omitted); *Estate of Holton*, 1976 WL 5206, at *2 (Del. Ch. Aug. 17, 1976).

[50] Lynch is not a creditor but a beneficiary whose claims stem from the alleged negligent actions of the trustee.

delay in bringing the claim, and resulting prejudice to the defendant.[52]  Knowledge and unreasonable delay are essential elements of laches, but what constitutes unreasonable delay is based upon the particular factual circumstances in that case.[53]  And, although not controlling, an analogous statute of limitations period will be "given great weight in deciding whether the claims are barred by laches."[54]  A party guilty of laches will be prevented from enforcing a claim in equity.[55]

I find that Lynch's claim against the Estate is time-barred by the equitable doctrine of laches.  Lynch had knowledge of his claims against the Estate and the executor since September 2011, when he began complaining about the personal property being moved out of the family home and into a storage unit.  Lynch received notice of the filing of the Estate's final account in September 2011, and failed to file any exception to the account before the Estate was closed in December 2011.  Lynch has not provided any justification for his delay in bringing his claim.  The Estate has been closed since December 2011, and all property distributed, so the Estate would be prejudiced if this claim is allowed to go forward at this time.  And, considering the analogous statute of limitations period for the laches analysis is three years (10 *Del.*

---

[51] *E.g., Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982); *Kraft v. Wisdom Tree Investments, Inc.*, 145 A.3d 969, 974-75 (Del. Ch. 2016).
[52] *Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009).
[53] *Id.* at 9.
[54] *Id.*; *See also Adams,* 452 A.2d at 157.
[55] *Kraft,* 145 A.3d at 974.

*C.* § 8106), that period has long since expired.[56]  Accordingly, Lynch's claims against the executor and the Estate related to the Estate's tangible personal property are barred by laches.

3. **Barba should not be removed as trustee of the Special Needs Trust**

Lynch asks that Barba be removed as trustee of the SNT because he alleges Barba has committed a breach of trust and has mismanaged trust funds.  The SNT provides that the power to designate fiduciaries includes the "power to remove any

---

[56] Lynch's claims arose in and around September 2011, and evidence presented indicates that Lynch was aware of the damage – or potential for damage – around that time.  The three-year statute of limitations period would have run before the end of 2014, and the complaint alleging the damages was filed in March 2016.  In his exceptions, Lynch argues that he did not discover the damages to his property until he moved those assets into his new home in late 2014 and the delay in discovery was caused by Barba's refusal to pay Lynch the funds he needed to move the property out of the storage unit, so that the three-year limitations had not run before he filed this action.  Generally, for limitation statutes like 10 *Del. C.* § 8106, the cause of action accrues at the time of the wrongful act. *Cf. Isaacson, Stolper & Co. v. Artisans' Sav. Bank*, 330 A.2d 130, 132 (Del. 1974); *Queen Anne Pier Condo. Council v. Raley*, 1988 WL 7618, at *2 (Del. Super. Ct. Jan. 26, 1988).  Ordinarily, the plaintiff's ignorance of the facts is no obstacle to the operation of a statute of limitations.  However, under the time of discovery rule, the statute of limitations period may be tolled, if the cause of action was inherently unknowable and the plaintiff was blamelessly ignorant of the cause of action, or if the defendant fraudulently concealed the cause of action. *Cf. Boyce v. Blenheim at Bay Pointe, LLC*, 2014 WL 8623125, at *2-*3 (Del. Super. Ct. Dec. 30, 2014).  In cases where the time of discovery rule applies, the limitations period begins to run "upon the discovery of facts . . . sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Cf. Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (citation omitted).  I do not find the circumstances exist, in this case, to support tolling the statute of limitations period.  Lynch was aware of some damage to the property back in the fall of 2011, so the damage was not inherently unknowable. No evidence has been presented that Barba fraudulently concealed the damage and Lynch cannot be considered blameless of his claimed ignorance in determining the exact damage he alleges occurred during the move until three years following the move, when he had access to the storage unit where the property was stored.

trustee so designated, with or without cause."[57]  Delaware law authorizes the Court of Chancery to remove a trustee if the trustee commits a breach of trust, or if the court determines, "with due regard for the expressed intention of the trustor and the best interests of the beneficiaries," that there has been a substantial change in circumstances, the trustee is unfit, unwilling or unable to administer the trust properly, or the hostility between the trustee and beneficiaries threatens the efficient administration of the trust.[58]  Similarly, 12 *Del. C.* § 3303(a) states that a trust can expand, restrict, or limit various rights and duties, but "nothing in this section shall be construed . . . to preclude a court . . . from removing a fiduciary on account of the fiduciary's willful misconduct."  The Court clearly has the power to remove a trustee who "fails to perform [his] duties through more than mere negligence."[59]  But that authority should be "exercised sparingly."[60]

The individuals authorized to designate and remove the SNT's trustee have not acted.  Lynch has presented no evidence of any wrongdoing by Barba acting as trustee of the SNT and I find no basis to remove him.

Both parties describe the relationship between Barba and Lynch as difficult and, at times, hostile.  Lynch has asserted that the relationship between him and

---

[57] Def. App. A-8, Art. II, at 2.  The SNT vests the power to designate or remove a successor trustee in five individuals (Barba, Ethel's brother, sister and two grandsons, Eric and Matthew Barba), by majority vote.  The five individuals have not acted to remove Barba as trustee.

[58] 12 *Del. C.* § 2237.

[59] *McNeil,* 798 A.2d at 513 (citation omitted).

[60] *Id.*

Barba is hostile and that Barba has been "ill-mannered and demeaning on the phone."[61] Barba stated that Lynch's conduct has included "repetitious phone calls, regular, mail, certified mail, hand-delivered mail, and unwanted and unscheduled personal visits to Barba's home."[62] The record includes numerous letters between Lynch and Barba and Barba's attorneys that reflect the disparity between Lynch's and Barba's expectations concerning the administration of the trust. Barba's inability to accommodate Lynch's requests for payments from the trust has appeared to cause the most contention between them. The question is whether there is sufficient hostility between the trustee and beneficiary to threaten the efficient administration of the trust.

The trustor was clear in her intent in the SNT that the trustee would have broad powers, including "sole and absolute discretion" concerning the distribution of trust assets.[63] A "mere lack of confidence in a trustee by the beneficiaries, or the existence of friction between them, is not a sufficient ground for removal of a trustee. To warrant removal, the friction or hostility must be of such a nature as to make it impossible for the trustee to properly perform his duties."[64] Lynch has failed to provide any evidence that the difficult relationship between Barba and Lynch has

---

[61] Pl.'s Answer to Def.'s Mot. for Summ. J., at 8.

[62] Def. Opening Br. in Supp. of Mot. for Summ. J., at 5.

[63] Def. App. A-8, Art. V, at 4.

[64] *duPont v. Wilmington Trust Co.*, 2017 WL 4461132, at *8 (Del. Ch. Oct. 6, 2017), *as revised* (Del. Ch. Oct. 11, 2017), citing *Vredenburgh v. Jones*, 1980 WL 6786, at *2 (Del. Ch. June 13, 1980).

prevented Barba from properly performing his duties, or has threatened the efficient administration of the trust.

4. **The Special Needs Trust should be terminated and its assets distributed to Lynch**

Both Barba and Lynch seek the termination of the SNT. Barba proposes that remaining assets in the trust, after payment of Barba's attorneys' fees and costs, trustee commission and other expenses, be distributed to Lynch in satisfaction of any claims Lynch has against Barba and the trust.

A court may terminate a trust where the beneficiaries consent and, after considering the objectives of the settlor in establishing the trust, the court determines that the purpose of the trust has become impossible to achieve, the administration of the trust is extremely difficult or impractical, and/or continuing the trust is not in the best interest of the beneficiaries.[65] A factor in considering whether the settlor's intent will be frustrated by terminating the trust is whether the trust is a spendthrift trust.[66]

I find that, reading the trust instrument as a whole, the trustor's primary object was to provide financial assets to help meet the basic living expenses of her son, Lynch, during his lifetime. Although the SNT is a spendthrift trust[67], the SNT gives broad authority to the trustee to distribute trust assets – up to the whole principal of

---

[65] *See generally* George Gleason Bogert et al., Bogert's Trusts and Estates, §§ 1007-08 (2d ed. Rev. 1993).

[66] *Id.* at §1008. If a settlor establishes a spendthrift trust, the purpose is to prevent the beneficiaries' creditors from accessing the trust funds and if the trust is terminated and the assets turned over to the beneficiaries, then the funds are accessible by the beneficiaries' creditors.

the trust – if he deems it advisable to satisfy Lynch's health, safety and welfare needs.[68] So, the trustee would have the authority to turn over all of the trust assets to Lynch to enable him to meet those needs. But, the SNT also specifies an approach for terminating the trust – it authorizes the trustee, in his "sole and absolute discretion," to transfer the trust assets to Delaware Care Plan, Inc., or other similar organization, to continue the management of the trust assets on behalf of Lynch.[69] Barba has stated that Delaware Care Plan, Inc. is not in a position to accept the SNT assets and he has found no other trustee to handle this trust. He believes that the purposes for which the trust were created cannot be met and that, under these circumstances, the trustee has the discretion to ask the Court to authorize him to terminate the trust and distribute the assets to the beneficiary.[70]

Given the unique circumstances in this case, I recommend that the Court terminate the Ethel M. Lynch Special Needs Trust because the purpose of the trust will be impossible to achieve in the future. The current trustee, Barba, is not willing to continue to serve as trustee of the SNT. The Delaware Care Plan, Inc., which is the entity tasked by the SNT to manage the trust assets if the SNT is to be terminated, is not willing to manage the trust assets. Barba has found no other trustee willing to

---

[67] Def. App. A-8, Art. XII, at 12.
[68] Def. App. A-8, Art. V, at 4.
[69] *Id.* at 4-5.
[70] D.I. 96, Ltr. from Def.'s Att'y Ferry to M. Griffin (Oct. 13, 2017) (indicating that the termination of the trust would be handled in such a manner as to prevent adverse tax consequences and to confirm with Medicaid that there it has no claim against the trust).

serve. Without a trust administrator, the object of the trustor – the management of the trust assets on Lynch's behalf – is no longer achievable. The SNT has limited funds at this point ($73,487 in trust accounts as of September 30, 2017), the trustor allowed broad discretion for use of the trust funds to benefit Lynch, and with Lynch's limited income, the assets will likely be used by Lynch towards one of the broad purposes under the trust – for his health, safety and welfare.

And, all of the beneficiaries of the SNT, including the contingent beneficiaries, consent to the termination of the trust. Lynch seeks termination and the SNT's contingent beneficiaries, Rhonda and Barba's sons, have agreed to waive any claim to potential distributions and consent to the termination of the trust and the distribution of the net remaining assets to Lynch.

With the termination of the trust and distribution of the trust assets to Lynch, the trustee's responsibilities in winding up the trust will include working with Lynch to provide guidance in how to manage the remaining trust assets. I recognize that this transfer of trust funds eliminates the outside controls on Lynch's expenditures of those funds. But given the factors discussed above, I find that this is the only viable result.

5. **Trust funds can be used to pay for attorneys' fees and trustee commissions**

In trust litigation, the Court has the discretion, "as justice and equity may require," to award reasonable attorneys' fees to any party, to be paid by another party

or from the trust at issue.[71] The general rule is that a trustee is entitled to reasonable attorneys' fees when defending a trust and his own actions as a trustee.[72] Exceptions to that rule focus on whether the trustee acted in bad faith or fraudulently, and depend upon the extent of the trustee's wrongful conduct, and whether his actions benefitted the trust.[73] The SNT clearly authorized the trustee to employ and compensate attorneys as he deems "necessary for the proper administration of the trust."[74] No facts have been presented to indicate that the work of Barba's attorneys to advise him regarding the SNT exceeded that authority. Nor has there been any showing that Barba acted in bad faith, fraudulently, or wrongfully. Further, he has been successful in the claims he has asserted in the litigation. Attorneys' fees for Barba associated with this litigation are entitled to be paid from the trust. The amount and reasonableness of the award of the fees and costs for Barba's attorneys related to this litigation remain to be addressed through the submission of an affidavit of fees by Barba prior to the termination of the trust.

The next question is whether it is appropriate to award attorney's fees from the trust for Lynch's attorney, Jackson Shrum. On September 20, 2017, Shrum, who represented Lynch in this litigation from December 20, 2016 until May 10, 2017, filed a motion for attorney fees in the amount of $11,240.75. Lynch filed a response

---

[71] 12 *Del. C.* § 3584.

[72] *E.g., In re Unfunded Ins. Tr. Agreement of Capaldi*, 870 A.2d 493, 496 (Del. 2005); *McNeil*, 798 A.2d at 515.

[73] *McNeil*, 798 A.2d at 514-15.

to that motion, and Shrum submitted a reply. In granting Shrum leave to withdraw as Lynch's counsel, Master Ayvazian's May 10, 2017 order stated that Shrum "shall be entitled to receive fees and costs incurred in this action as of this date."[75] This case was reassigned to me after Master Ayvazian's retirement at the end of May 2017.

Courts have the discretion to award attorneys' fees in trust litigation where the attorney's services "are necessary for the proper administration of the trust" or benefited the trust."[76] With regard to reimbursement for attorneys' fees for beneficiaries involved in a trust dispute, the analysis focuses on whether the benefits to the trust through the beneficiaries' role in the litigation outweigh their personal motives, even though they may have been motivated by self-interest.[77] After conducting such a cost-benefit analysis in this case (comparing the benefit to the trust and Lynch's motives in filing the litigation), I do not find that Lynch acted in bad faith or fraudulently. And, although he failed to present evidence showing Barba breached his fiduciary duty, I recommend that the Court terminate the trust, which is one of Lynch's main objectives in this litigation.

In his response to Shrum's motion, Lynch claims that Shrum should not be paid for his services beyond the original retainer of $5,000, which was paid from trust

---

[74] Def. App. A-8, Art. VIII, at 8.
[75] D.I. 73.
[76] *Capaldi,* 870 A.2d at 496; *McNeil,* 798 A.2d at 514-15.
[77] *Capaldi,* 870 A.2d at 498.

funds. He acknowledges execution of the retainer agreement on December 16, 2016 but points to the addendum he signed and included when he returned the agreement, which stated that Lynch was "not in a position to pay any legal expenses outside of the Special Needs Trust," and that the services Shrum will provide through the retainer will help Shrum conclude whether the "cost of litigation does not merit the value of possible recovery; therefore, it would be best to limit [Shrum's] bill to the retainer and provide an opinion at that point as discussed."[78] Shrum's reply states that he, nor his firm, ever agreed to cap his fees and that it was always understood the SNT would pay his fees, not Lynch personally.[79] He further states that he has discounted his fees and not billed for dozens of hours of time, including any time spent after March 29, 2017 (even though he continued to provide representation through May 10, 2017), or substantial amounts of out-of-pocket costs associated with this representation.

I find that Shrum's letter of engagement informed Lynch as to the hourly cost of his services and the arrangements regarding charges for services and Lynch signed that agreement. Lynch's addendum to the agreement does indicate that Lynch expected Shrum to limit his services to the cost of the retainer and provide his opinion about the value of moving forward with the litigation to Lynch at that point. There is no indication that Shrum or his firm acknowledged the addendum. Lynch

---

[78] Pl's Resp. to Mot. for Att'y Fees (Oct. 10, 2017).

was aware in March 2017 that Shrum's services had exceeded the retainer, yet he continued to contact Shrum and knew that Shrum was continuing to represent him and to communicate with Barba's attorney on his behalf until Shrum withdrew as counsel on May 10, 2017.

Given Master Ayvazian's May 10, 2017 order stating that Shrum "shall be entitled to receive fees and costs incurred in this action as of this date," and having concluded that the fees submitted in Shrum's affidavit of fees with his motion are not unreasonable, I recommend that the Court order that Shrum's fees in the amount of $11,240.75 be paid out of the SNT assets.

Barba indicates that he plans to take a reasonable trustee commission prior to terminating the trust.[80] Trustees are generally entitled to reasonable compensation for their services rendered in furtherance of the trust.[81] The trust may fix the reasonable compensation of a trustee or may provide that the trustee shall serve without compensation. If neither of those apply, then the trustee's commission is determined consistent with Court of Chancery Rule 132, subject to "increase or decrease by the Court for cause appearing sufficient to the Court." The SNT contains no provision related to payment of commission to a trustee, so payment is neither specified nor precluded. I recommend that the Court find, particularly given the trustee obligations

---

[79] Movant's Reply to Resp. in Support of Mot. for Att'y Fees (Oct. 18, 2017).
[80] Def. Opening Br. in Supp. of Mot. for Summ. J., at 26.
[81] 12 *Del. C.* § 3560.

caused by the needs of the beneficiary and the litigation, a trustee commission consistent with the provisions in Rule 132 is appropriate in this case.

## CONCLUSION

For the foregoing reasons, I recommend that the Court grant Barba's motion for summary judgment as he has established there is no genuine issue of material fact with respect to this dispute and he is entitled to judgment as a matter of law. Lynch failed to show that Barba violated his fiduciary duties as trustee of the SNT and presented no evidence that Barba improperly spent or misappropriated trust monies, failed to distribute SNT funds consistent with the terms of the trust or to provide the required accounting and other information to Lynch, or acted unfairly in favor of the contingent beneficiaries, his sons. As a consequence, I conclude that there is no basis for removing Barba as the trustee of the SNT. Given the particular circumstances surrounding this trust, I recommend that the Court terminate the SNT, since its purpose has become impossible to achieve, and distribute the remaining trust assets to Lynch after all outstanding trust debts have been paid, including the trustee's attorneys' fees and the fees of Lynch's former attorney, Shrum, as well as the appropriate trustee commission under Court of Chancery Rule 132. I also recommend that the Court find that Lynch's claims regarding Barba's alleged mishandling of property in the Estate are barred by laches. This is a final report and exceptions may be taken pursuant to Rule 144.